Mario Pittoni, J.
This is another of the many actions which have been prompted by the fairly recent apportionment decisions of the United States Supreme Court in Baker v. Carr (369 U. S. 186); Gray v. Sanders (372 U. S. 368); Reynolds v. Sims (377 U. S. 533); WMCA v. Lomenzo (377 U. S. 633); Sailors v. Board of Educ. (387 U. S. 105); Dusch v. Davis (387 U. S. 112) and others. The New York Court of Appeals has also made declarations of law in the same area in Iannucci v. Board of Supervisors (20 N Y 2d 244), Seaman v. Fedourich (16 N Y 2d 94) and others.
When the matter was presented to me in October, 1967,1 gave all parties reasonable time and latitude in the preparation and submission of further papers and briefs. I also agreed to delay my decision a reasonable time on the representation that a similar case, Avery v. Midland County (Texas) had just been submitted to and argued before the United States Supreme Court. However, it is now the middle of February, 1968 and justice can best be served by rendering my decision immediately, without further delay. After all, no matter how much time I delay or spend in attempting to write a learned or learned sounding decision, my conclusions will be reviewed by two and perhaps three appellate courts. Ultimate justice in this case will be rendered, *1020 not by me, but by the highest tribunal which will have the last say in this case.
Now for the case itself:
Plaintiffs seek summary judgment, pursuant to CPLR 3212, in their action for declaratory judgment. They attack, on constitutional grounds, the present apportionment of the Suffolk County Board of Supervisors. Plaintiffs contend that the board, as presently constituted, violates the equal protection clause of the New York State Constitution (art. I, § 11) which is similar to that of the Fourteenth Amendment of the Federal Constitution. It states that “ No person shall be denied the equal protection of the laws of this state or any subdivision thereof.” (Emphasis added.)
Defendants cross-move for summary judgment on the ground that in a local government, such as Suffolk County, possessing powers and structure as a confederation of towns, a classification is permitted, and improper discrimination does not exist merely because of population disparities in the towns.
No essential facts are in dispute. Under the present system, the Supervisor of each of Suffolk County’s 10 towns, elected as such by the voters of his town, casts one vote when serving in his other role as a member of the County Board of Supervisors, without regard to the population of his town. (This is pursuant to section 203 of the Suffolk County Charter [L. 1958, ch. 278, as amd.], a provision identical to sections 150 and 153 of the County Law, applicable to noncharter counties.)
The population of each town in Suffolk County for the year 1960 as set forth in the United States census of population was
as follows:
Shelter Island............. 1,312
East Hampton........................ 8,827
Southold ............................. 13,295
Riverhead............................ 14,519
Southampton ......................... 26,861
Smithtown ........................... 50,347
Brookhaven .......................... 109,900
Huntington........................... 126,221
Babylon.............................. 142,309
Islip ................................. 172,959
The approximate population of each town in Suffolk County as of January 1, 1967 was as follows:
Shelter Island........................ 1,555
East Hampton........................ 11,581
Southold............................. 15,940
*1021 Riverhead............................ 17,367
Southampton ......................... 33,295
Smithtown ........................... 94,988
Huntington........................... 175,975
Brookhaven .......................... 189,831
Babylon.............................. 190,497
Islip ................................. 251,901
The effect, to take an example, is that the Town of Shelter Island, with approximately 1,555 people, enjoys, through its Supervisor, the same voting power and effect as the Town of Islip, with approximately 252,000 people. Furthermore, the five east end towns, with about 9 or 10% of the whole population of Suffolk County, enjoy equal voting strength and influence on county matters as the five west end towns.
Although the relief sought in this case is solely pursuant to the equal protection provision of the New York State Constitution, the similarity of the State and Federal equal protection clauses commands respect for and obedience to the United States Supreme Court decisions in this area. The guarantee of “ one person, one vote ’ ’ commanded by the United States Supreme Court decisions has equal application to elective legislative bodies below the level of the State Legislature Iannucci v. Board of Supervisors, 20 N Y 2d 244, 249, supra; Seaman v. Fedourich, 16 N Y 2d 94, 101, supra). Thus, all municipalities, villages, towns, cities and counties, as political subdivisions of the State and exercising only those powers delegated to them by the State (N. Y. Const., art. IX, § 1), must insure that the vote of each citizen is approximately equal in weight to that of every other citizen, be it Suffolk or any other such municipality in this State. In the words of Chief Judge Fuld in the lannucci case (pp. 249-250): “ There is no doubt that, as presently constituted, both Boards of Supervisors are malapportioned. Equal representation on the boards of municipalities with populations that vary from a few hundred to many thousands does not satisfy the ‘ one person, one vote ’ principle announced in Reynolds v. Sims (377 U. S. 533) and, although the United States Supreme Court has not yet passed upon the question (see, e.g., Dusch v. Davis, 387 U. S. 112; Avery v. Midland County, 406 S. W. 2d 422 [Tex.], cert, granted 388 U. S. 905, 35 U. S. Law Week 3437), we have expressly held that the rule of the Sims case applies to local ‘ elective legislative bodies exercising general governmental powers ’. (Seaman v. Fedourich, 16 N Y 2d 94, 101; see, generally, Weinstein, The Effect of the Federal Reapportionment Decisions on Counties and Other Forms of Municipal Government, 65 Col. L. Rev. 21.) *1022 The present imbalance on the boards is directly attributable to the County Law which provides that the supervisors of the several cities and towns in each county, without regard to population differences, ‘ shall constitute the board of supervisors of the county ’ (§ 150) and that the board shall conduct its business ‘ by the affirmative vote of a majority of [its] total membership ’ (§ 153, subd. 4). Quite clearly, therefore, these sections of the County Law, as applied to Saratoga and Washington Counties, are violative of constitutional requirements.”
The argument is made, as in many other instances and by other counties, that the Suffolk County Board of Supervisors is not a legislative body; that “ The Board performs functions which are essentially administrative, and does not possess broad legislative powers in the classical sense.” However, by its own Charter, Suffolk County has made the Board of Supervisors a legislative body exercising general governmental powers. The Suffolk County Charter (§ 201) establishes the Board of Supervisors the “ legislative and policy determining body of the county, ’ ’ to have and to exercise all powers and duties of county boards of supervisors as well as specific powers granted to the board by the Charter itself. The County Charter (§ 202, subd. [7]) also authorizes the board to make appropriations, levy taxes, incur debts and perform other functions to support the operation of county departments and to perform other county duties prescribed by the Charter and other law. Added to these sections of the County Charter is the County Law (art. 5, General Powers of Board of Supervisors, § 233-a) which itemizes those county purposes for which counties may tax real estate pursuant to the State Constitution (art. VIII, § 10). Then too, the State Constitution (art. IX, § 1, subd. [a]) commands that “ Every local government * * * shall have a legislative body elective by the people thereof.” Unquestionably, Suffolk County is a local government and until a new system is established, the Board of Supervisors is the legislative body of Suffolk County.
The County Attorney, who represents the Board of Supervisors, argues that New York’s Bill of Bights for local governments (N. Y. Const., art. IX, § 1, subd. [b]) permits officers of a local government to “ be elected by the people of the local government, or some subdivision thereof,” and thus authorizes election of the county’s legislative body by separate elections, one contained within the boundaries of each town. A quick answer is that this provision does not repeal or modify section 11 of article I of the State Constitution in language, thought or principle. The equal protection provision of section 11 of *1023 article I is a basic constitutional right of all the people of the State. Then too, both provisions were in effect in 1965 when Seaman v. Fedourich (16 N Y 2d 94, supra) was decided. Third, as previously stated, every local government ‘ ‘ shall have a legislative body elective by the people thereof ” (N. Y. Const., art. IX, § 1, subd. [a]). In short, regardless of some intricately spun arguments, the County Board of Supervisors is a county legislative body and represents people, rather than towns.
Other arguments on both sides have been considered but are not discussed because a disposition of the major points makes further discussion useless.
Plaintiffs’ motion for summary judgment is granted and defendants’ cross motion is denied. The present system of voting and representation on the Suffolk County Board of Supervisors violates the equal protection clause of the State Constitution (art. IX, § 11).
The Suffolk County Board of Supervisors is hereby directed to adopt and submit to me a proposed constitutionally valid plan of reapportionment within 45 days from the date of the order to be entered herein. (Iannucci v. Board of Supervisors, 20 N Y 2d 244, 250, 253, 254, supra.) If the board fails to do so in the specified time, the board shall thereafter immediately adopt a voting plan whereby each Supervisor shall have at least one vote regardless of the population of his town. But for towns of 10,000 population, according to the latest Federal Census, each Supervisor shall be entitled to cast one vote for every 10,000 persons in his town. No extra vote shall be allowed for any number over the 10,000 population standard, but insufficient to reach the next 10,000 plateau, table or level.
The request to enjoin the Suffolk Board of Supervisors from acting as a board for the county until a change is made in the Charter to conform to the constitutional requirements is denied. Suffolk County and other counties with their antiquated systems predating Baker v. Carr (369 U. S. 186, supra) have survived and have prospered for decades and generations. No earth-shaking damage will result if the old system continues a few months more. Harm, however, could result if, in the meantime, the board were prohibited from legislating, especially on matters where early action were required.