393 F.2d 457
 I. William BIANCHI, Jr., Quentin B. Sammis and The Town of
Huntington, Plaintiffs-Appellants,
v.
Evans K. GRIFFING, William P. Bain, Lester M. Albertson,
William J. Leonard, Stephen F. Meschutt, Ralph J. Osgood,
Charles R. Dominy, Robert J. Flynn, Arthur M. Cromarty and
Thomas J. Harwood, constituting the Board of Supervisors of
Suffolk County, New York, Defendants-Appellees, and Town of
East Hampton, Town of Riverhead, Town of Shelter Island,
Town of Southampton and Town of Southold,
Intervenors-Defendants-Appellees.
 No. 325, Docket 31652.
 United States Court of Appeals Second Circuit.
 Argued March 12, 1968.
Decided April 5, 1968.
 
 Richard C. Cahn, Huntington, N.Y., for plaintiffs-appellants Sammis and the Town of Huntington.
 Frederic Block, Centereach, N.Y., for plaintiff-appellant Bianchi.
 Stanley S. Corwin, Asst. County Atty., Suffolk County, N.Y. (George W. Percy, Jr., County Atty., of counsel), for defendants-appellees.
 Howard M. Finklestein, Riverhead, N.Y. (Reginald C. Smith, Pierre G. Lundberg, Riverhead, N.Y., of counsel), for intervenors-defendants-appellees.
 Before KAUFMAN and HAYS, Circuit Judges, and RYAN, District Judge.*
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 This appeal presents a problem that has received increasing attention since the landmark decision in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)-- the applicability of the developing body of reapportionment law to units of local government.
 
 I.
 
 2
 The Suffolk County Board of Supervisors, in accordance with a system of representation whose origins are more than 250 years old, Laws of New York, 1703, c. 278, is composed of the supervisors of the county's ten towns. Each town supervisor is elected by popular vote in his respective town and casts a single, non-weighted ballot as a member of the Board of Supervisors. See Suffolk County Charter 201, 203; Laws of New York, 1958, c. 278. Local laws and resolutions are adopted by a vote of not less than a majority of the total membership of the board. Ibid. The boundaries of the various towns were not drawn with an eye on population and disparities have always existed. Over the years, however, a burgeoning and shifting population spurred by rapid industrial development has resulted in a marked increase in the population of those towns situated in the western region of the county. The eastern part of the county retains its more rural characteristics. Thus, as of January 1, 1967, the approximate populations of the ten towns ranged from Shelter Island and East Hampton, with 1,555 and 11,581 people respectively, to Brookhaven with 189,831 persons and Islip with 251,901.[1] ] The five towns in the eastern sector, with about 10 per cent of the county's population, are equal in voting strength on the Board of Supervisors to the five westerly towns.[2]
 
 
 3
 Plaintiffs, residents and qualified voters of the Towns of Brookhaven and Huntington,[3] commenced the present suit on July 27, 1962, seeking a declaration that the Fourteenth Amendment bars equal voting by supervisors representing towns of substantially unequal population, an injunction prohibiting the Board of Supervisors from functioning so long as the relative voting strength of the supervisors remained unaltered, and requesting that a special statutory court be convened. See 28 U.S.C. 2281 et seq. A three-judge court was assembled and determined that 203 of the Suffolk County Charter violated the equal protection clause; as a temporary measure the court instituted a modified system of weighted voting. 256 F.Supp. 617 (E.D.N.Y.1966). However, on direct appeal the Supreme Court held that a threejudge court had been improperly convened since the county charter whose constitutionality was in question was not a state statute of general and statewide application. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967). The Court vacated the judgment below to permit the entry, by a single judge, of a fresh decree from which a timely appeal could be taken to this court. Id. at 104, 87 S.Ct. 1544.
 
 
 4
 On the remand, Judge Bruchhausen, who had convened the three-judge court and concurred in the decision written by Circuit Judge Moore, ruled that the complaint failed to state a cause of action under the Fourteenth Amendament and dismissed the suit. His change of mind was presumably influenced by the recent decisions in Sailors v. Board of Education, etc., 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967) (school board officials with essentially administrative duties may be chosen under an 'elective-appointive' system) and Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967) (districts of unequal population may be the basis of residence requirements of city council members elected at large) and by the Court's statement in Sailors that:
 
 
 5
 'we need not decide at the present time whether a State may constitute a local legislative body through the appointive rather than the elective process. We reserve that question for other cases such as (Board of Supervisors v. Bianchi) * * * which we have disposed of on jurisdictional grounds.' 387 U.S. at 109-110, 87 S.Ct. at 1553.
 
 
 6
 Following Judge Bruchhausen's decision a suit was instituted in a state court challenging the apportionment of Suffolk County under the equal protection clause of the state constitution: 'no person shall be denied the equal protection of the laws of this state or any subdivision thereof.' N.Y.Const., Art. 1, 11. In that action the present voting structure of the Board of Supervisors was declared invalid under state law and the Board was directed to submit a reapportionment plan within 45 days failing which the court would enforce a plan of its own. Ambro v. Board of Supervisors etc., Sup.Ct., 287 N.Y.S.2d 458 (February 13, 1968). Compare Iannucci v. Board of Supervisors etc., 20 N.Y.2d 244, 282 N.Y.S.2d 502 (1967); Seaman v. Fedourich, 16 N.Y.2d 94, 262 N.Y.S.2d 444 (1965).[4] We have been notified by counsel that an appeal has been taken from the decision in Ambro and that as of this writing the board continues to function without modification of its voting structure.
 
 II.
 
 7
 The pronouncement by the Supreme Court during the past week makes it apparent that the current organization of this Board of Supervisors cannot be justified under the 'one man-- one vote' standard of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Avery v. Midland County,390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). The population disparity between the towns is so great that the 'vast imbalance,' Avery v. Midland County, supra at 476, 88 S.Ct. at 1116, must be deemed unsatisfactory and intolerable regardless of the statistical tool used to measure voter inequality: the population-variance ratio, the maximum detrimental deviation from the average percentage, or the minimum fraction of the population necessary to control board action. See Note, Reapportionment, 79 Harv.L.Rev. 1228, 1250-51 (1966).
 
 
 8
 The Supreme Court has rigorously rejected a mechanical abstract and doctrinaire approach to the problems of local government.
 
 
 9
 'Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions. We see nothing in the constitution to prevent experimentation.' Sailors v. Board of Education, supra, 387 U.S. at 110-111, 87 S.Ct. at 1553.
 
 
 10
 But it is beyond question that 'the prohibitions of the Fourteenth Amendment extend to all actions of the State denying equal protection of the laws; whatever the agency of the state taking the action.' Cooper v. Aaron, 358 U.S. 1, 17, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5, 19 (1958). And the relevance of the principles of Reynolds v. Sims to 'units of local government with general responsibility and power for local affairs' has been settled by Avery v. Midland County, supra: 'the Constitution permits no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body.' 390 U.S. at 484, 88 S.Ct. at 1120.
 
 
 11
 It is apparent that the Board of Supervisors possesses 'general governmental powers.' Section 201 of the county charter provides that the board 'shall be the legislative and policy determining body of the county and shall * * * have and exercise all the powers and duties of the county * * *.' Accordingly, section 202 authorizes the board, among other things, to levy taxes, incur debts, make appropriations and otherwise support the operation of the county government. In addition, a variety of state programs of great importance to county residents are administered by the county. See, e.g., N.Y. Mental Hygiene Law, McKinney's Consol.Laws, c 27, 191 and 191-a. Furthermore, the 'home rule' provisions of the state constitution permits the county to play a vital role in the enactment of state laws which affect only the particular county, Art. 9, 2(b)(2), (2), and grant the county substantial legislative authority over areas as broadly defined as 'the government, protection, order, conduct, safety, health and wellbeing of persons or property therein,' Art. 9, 2(c)(10). It may well be true that the county and its Board of Supervisors perform some functions that would properly be termed 'executive' or 'administrative' but we conclude, as the Court did in Avery when faced with the same argument, that 'in this regard the (Board of Supervisors and the county government) is representative of most of the general governing bodies of American cities. counties, towns and villages.' 390 U.S. at 482, 88 S.Ct. at 1119.
 
 
 12
 Appellees urge nevertheless that Reynolds v. Sims was meant to apply only where an apportionment plan exhibits 'invidious discrimination' and that the structure of the Board of Supervisors merely reflects a detente between urban and rural interests. See Dusch v. Davis, 387 U.S. 112, 117, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967). In avery, however, the Supreme Court recognized that the equal protection clause does not prevent a state from making rational, non-arbitrary distinctions between citizens. 390 U.S. at 474, 88 S.ct. 1114, 20 L.Ed.2d 45. But, it clearly rejected the argument, urged in dissent, that applying Reynolds v. Sims to units of local government with general powers would be destructive of effective and responsive local government. See generally the dissenting opinion of Mr. Justice Fortas. Compare Avery v. Midland County, 406 S.W.2d 422 (Tex.Sup.Ct.1966).
 
 
 13
 Appellees maintain, moreover, that the reapportionment cases are not decisive of the instant litigation because the people of Suffolk County do not elect the members of the Board of Supervisors; the people merely elect town supervisors who serve on the board in their capacity as 'delegates' of their respective towns. But the state constitution provides that 'every local government * * * shall have a legislative body elective by the people thereof.' Art. 9, 1(a). Compare Wesberry v. Sanders, 376 U.S. 1, 7-8, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). And, appellees' argument has not found favor with the state courts, those most intimately familiar with the structure, operation and character of county government in New York. See Ambro v. Board of Supervisors, supra; cf. Seaman v. Fedourich, supra. The mere fact that board members may be characterized as 'delegates' and perform functions in addition to their duties on the board, does not provide a meaningful distinction from Avery. We are impelled to the realistic recognition that a citizen entering the voting booth chooses at one and the same time a member of the Board of Supervisors and his town supervisor. We hold that the mandate of the equal protection clause cannot be effectively circumscribed by a local legislative body with general governmental powers whose members are elected officials of singlemember geographical districts of substantially unequal population simply by labeling the members 'delegates.'
 
 III.
 
 14
 Although we thus reverse the decision below, we do not believe it would be appropriate or timely for the District Court to devise and impose on the county a reapportionment plan. As we have noted, the state courts are already intimately involved in changing the structure of the Board of Supervisors. 'The power of the judiciary of a State to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by (the Supreme) Court but appropriate action by the States in such cases has been specifically encouraged.' Scott v. Germano, 381 U.S. 407, 409, 85 S.Ct. 1525, 1527, 14 L.Ed.2d 477 (1965) (per curiam). Following the practice sanctioned in Scott v. Germano, we direct the District Court to fix a reasonable time within which the appropriate state agencies may devise a constitutionally valid plan of reapportionment. The District Court should retain jurisdiction and if a valid plan is not adopted expeditiously it may enter such orders as it deems appropriate.
 
 
 15
 Reversed and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 *
 Of the District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 According to the United States Census, the population of each town in 1960 was: Shelter Island, 1,312; East Hampton, 8,821; Southold, 13,295; Riverhead, 14,519; Southampton, 26,861; Smithtown, 50,347; Brookhaven, 109,900; Huntington, 126,221; Babylon, 142,309; Islip, 172,959
 
 
 [2]
 An example of the difference in views of the five eastern and western towns is given in J. Weinstein, The Effect of the Federal Reapportionment Decisions on Counties and Other Forms of Municipal Government, 65 Colum.L.Rev. 21, 29 n. 31 (1965). The voters of the five western towns voted for a county police force by a 3 to 1 margin while the eastern towns were against it 2 to 1
 
 
 [3]
 The three-judge court, see infra, permitted intervention by the Town of Huntington but Judge Bruchhausen-- presumably because of his decision on the merits-- denied a motion to permit the Town of Huntington to continue in the suit. Appellees do not contest the point and on this record we see no reason why the Town of Huntington should not be allowed to participate in such further proceedings as may prove necessary
 
 
 [4]
 Other New York State counties have been redistricted pursuant to court order. See, e.g., Town of Greenburgh v. Board of Supervisors, etc., 49 Misc.2d 116, 266 N.Y.S.2d 998 (Sup.Ct.1966)