**EDUCATION/INSTRUCCION, INC, et al.**

v.

**Thomas MOORE et al.**

**Civ. No. 15085.**

United States District Court,
D. Connecticut.

June 13, 1973.

Igor I. Sikorsky, Jr., Sikorsky & Barberie, Hartford, Conn., for Education Instruccion, and others.

David M. Barry, Town Counsel, Manchester, Conn., for John W. Thompson, Individually and as Mayor of the Town of Manchester.

Bruce Kalom, Hebron, Conn., for Town of Hebron.

Alexander A. Goldfarb, Corp. Counsel, Peter G. Boucher, Asst. Corp. Counsel, Hartford, Conn., for Athanson, Individually and as Mayor of the City of Hartford.

William Pease, Whitman, Pease & Main, Simsbury, Conn., William S. Mayer, Individually and as First Selectman of Town of East Granby; Russell S. Shaw, Individually and as First Selectman of Simsbury.

Richard Goodman, Bailey & Wechsler, Hartford, Conn., Edward J. Stockton, Individually and as Mayor of the Town of Bloomfield.

John D. Adams, Enfield, Conn., for Frank Mancuso.

Thomas G. Dennis, South Windsor, Conn., for Abraham Glassman, Individually and as Mayor of the Town of South Windsor.

Robert F. Stengel, Hartford, Conn., for David Moser.

Donald J. Deneen, Andrew G. Messina, Jr., O'Malley & Deneen, Windsor, Conn., for Robert Geisel, Individually and as Mayor of the Town of Windsor.

William J. Butler, Town Atty., Hartford, Conn., for Wells V. Adams, Individually and as Mayor of the Town of Wethersfield.

David M. Barry, Town Counsel, Manchester, Conn., for John W. Thompson, Individually and as Mayor of the Town of Manchester.

William V. Dworski, New Britain, Conn., for Elmer A. Mortensen, Individually and as Mayor of Newington.

J. Charles Mokriski, Hartford, Conn., for Raynald E. Bergeron, Jeremiah Wadsworth, William S. Rogers.

Louis R. Pepe, Alcorn, Bakewell & Smith, Hartford, Hughe Mende Alcorn, Jr., Ralph G. Elliot, Alcorn, Bakewell & Smith, Hartford, Conn., for Daniel F. Sullivan, Individually and as First Selectman of the Town of Suffield.

Herbert Barall, Corp. Counsel, East Hartford, Conn., for Richard Blackstone, Individually and as Mayor of the Town of East Hartford.

Robert C. Hunt, Jr., Paul W. Orth, Hartford, Conn., for Edward J. Doyle, Individually and as First Selectman of the Town of Avon.

Palmer S. McGee, Jr., Ernest A. Inglis, Jr., Day, Berry & Howard, Hartford, Conn., for Jeremiah Wadsworth, Individually and as Mayor of the Town of Farmington and William S. Rogers, Individually and as Mayor of the Town of Glastonbury.

William W. Fisher, Jr., Hartford, Conn., for Otto C. Neumann, Individually and as First Selectman of the Town of Granby.

Edwin Gordon Hebb, Jr., Corp. Counsel, West Hartford, Conn., for Ellsworth Grant, Individually and as Mayor of the Town of West Hartford.

J. Read Murphy, Murtha, Cullina, Richter & Pinney, Hartford, Conn., for Richard Blackstone, as Chairman of Capital Region Council of Government.

Abbot B. Schwebel, Schwebel & Hall, Rockville, Conn., for Frank J. McCoy, Individually and as Mayor of the Town of Vernon and John L. Daley, Jr., Individually and as First Selectman for Town of East Windsor.

## RULING ON MOTIONS TO DISMISS

CLARIE, Chief Judge.

The plaintiffs in this civil rights action are Education/Instruccion, Inc., a non-profit corporation organized under the laws of the State of Connecticut for educational, charitable, and cultural purposes, and three named individuals, Benjamin Dixon, Julia Ramos, and A. Boyd Hinds, Jr., each of whom is a citizen of the United States and the State of Connecticut.[1]

The defendants are Thomas Moore, Chairman of the Capitol Regional Planning Agency, a planning agency organized pursuant to Conn.Gen.Stat. § 8–31a[2] to serve the "Capitol Region;"[3]

---

[1]. The plaintiffs Ramos and Hinds are residents of the City of Hartford. The plaintiff Dixon is a resident of the Town of Windsor. The plaintiff Ramos is a Puerto Rican-American; the plaintiff Dixon is a Black-American; and the plaintiff Hinds is White.

[2]. Connecticut General Statute § 8–31a provides:

"Within any planning region of the state as defined or redefined by the director of the office of state planning under the provisions of section 4–124b a regional planning agency may be created by the adoption of sections 8–31a to 8–37a, inclusive, by ordinance of the legislative bodies of two or more towns, cities or boroughs within such region, provided the total number of representatives of such towns, cities or boroughs shall equal sixty per cent or more of the total number of representatives possible of all the towns, cities or boroughs within such region computed as prescribed in this section. Any other town, city or borough within such region may join such regional planning agency by the adoption of said sections by

ordinance of its legislative body. Each town, city or borough within such region, except as provided herein, shall be entitled to two representatives on such agency and shall be entitled to additional representation on such agency at the ratio of one representative for each fifty thousand of population or fraction thereof over and above a population of twenty-five thousand as determined by the last-completed federal census. Cities and boroughs with boundaries not coterminous with the boundaries of the town in which they are located, upon adoption of the provisions of said sections, may have one representative on such agency provided the population of the city or borough is greater than fifty per cent of the total population of the town as determined by the last-completed federal census, and the town, upon adoption of the provisions of said sections, may have one representative on such agency. If the total population of the town is greater than twenty-five thousand, the town may elect or appoint the extra representative or representatives as pre-

Richard Blackstone, Chairman of the Capitol Region Council of Governments, a regional agency organized pursuant to Conn.Gen.Stat. § 4–124c [4] and consisting of the chief elected officials of each of the towns in the Capitol Region, except the towns of Newington, Somers, Hebron, and Windsor, which have chosen not to be members; George Romney, Secretary of the United States Department of Housing and Urban Development at the commencement of this action, and Lawrence Thompson, the regional director of that Department. Also named as parties defendant are twenty-nine individuals who are sued individually and in their official capacity as the "chief elected official" of each of the twenty-nine towns which comprise the "Capitol Region." [5]

Jurisdiction is invoked pursuant to the Civil Rights Acts of 1964 and 1968,

scribed above, except that, for each fifty thousand population residing in the city or borough, the city or borough may have one additional representative. Noncoterminous cities or boroughs which do not contain fifty per cent or more of the total population of the town in which they are located shall not adopt the provisions of said sections and shall not join such regional planning agency. Where a planning commission exists in a town, city or borough established under the provisions of the general statutes or any special act, at least one of the representatives from such town, city or borough to the regional planning agency shall be appointed by such planning commission. The other representative or representatives shall be elected or appointed in the manner provided by ordinance adopted by the legislative body of such town, city or borough."

3. The "Capitol Region" is composed of twenty-nine towns: Andover, Avon, Bloomfield, Bolton, Canton, East Granby, East Hartford, East Windsor, Ellington, Enfield, Farmington, Glastonbury, Granby, Hartford, Hebron, Manchester, Marlborough, Newington, Rocky Hill, Simsbury, Somers, South Windsor, Suffield, Tolland, Vernon, West Hartford, Wethersfield, Windsor, and Windsor Locks.

4. Connecticut General Statute § 4–124c provides:

"Within any planning region of the state as defined or redefined by the director of the office of state planning under the provisions of section 4–124b, a regional council of elected officials may be created by ordinance of the legislative bodies of two or more towns, cities or boroughs within such region. Any other towns, cities or boroughs within such region may join such council by similar action. The representative to the council from each member town, city or borough shall be elected chief executive of the member town, city or borough or, if such member town, city or borough does not have an elected chief executive, a member of its legislative body

chosen by such body to be such representative. Any town, city or borough which has become a member of the council may withdraw upon adoption of an ordinance by its legislative body."

5. The following twenty-nine individuals are sued in their official capacity as the "Chief elected official" of their respective Towns: George Athanson (Hartford); Robert E. Post (Andover); Edward J. Doyle (Avon); Edward J. Stockton (Bloomfield); Richard Morra (Bolton); Raynard E. Bergeron (Canton); William S. Mayer (East Granby); Richard Blackstone (East Hartford); John L. Daley, Jr. (East Windsor); Francis J. Prichard, Jr. (Ellington); Frank Mancuso (Enfield); Jeremiah Wadsworth (Farmington); William S. Rogers (Glastonbury); Otto C. Neumann (Granby); John W. Thompson (Manchester); Peter Crawford (Marlborough); David Moser, M.D., (Rocky Hill); Russell S. Shaw (Simsbury); Abraham Glassman (South Windsor); Daniel F. Sullivan (Suffield); Erwin P. Stoetzner (Tolland); Frank J. McCoy (Vernon); Ellsworth Grant (West Hartford); Welles V. Adams (Wethersfield); Edward A. Savino (Windsor Locks); Elmer A. Mortensen (Newington); Leonard H. Owens (Somers); Robert Geisel (Windsor); and Aaron Rein (Hebron).

The defendants Welles V. Adams of Wethersfield and Elmer A. Mortensen of Newington have filed motions to dismiss and for summary judgment as to themselves individually and as the chief elected officials of their respective towns, alleging in substance that they are merely ceremonial officers who have only a single vote in their town councils. The defendant Mortensen's affidavit further represents that the Town of Newington is not a member of the Capitol Region Council of Governments and that he is not a representative on the Capitol Region Planning Agency. The Court is of the view that its ruling on the motions of the defendant Daniel F. Sullivan, and those defendants who joined and adopted his oral argument at the motion hearings, renders moot the Adams and Mortensen Motions.

42 U.S.C. § 2000d et seq., and 42 U.S.C. § 3601 et seq., 42 U.S.C. §§ 1983 and 1988; 28 U.S.C. §§ 1331 and 1343(3) and (4); as well as under the fifth and fourteenth amendments to the United States Constitution. The amount in controversy exceeds $10,000 exclusive of interests and costs. The plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and injunctive relief from an alleged infringement of their rights under the Equal Protection Clause of the fourteenth amendment and the aforementioned statutory provisions.

The complaint is drawn in two separate counts.[6] The second count of the complaint, the only count with which the Court is concerned at the present time, challenges the proposed consolidation of the Capitol Regional Planning Agency (hereinafter the CRPA) with the Capitol Regional Counsel of Governments (hereinafter the CRCOG) as authorized by 1971 Public Act 821. Several of the individually-named defendant elected town officials have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. The Court, having reviewed the various memoranda, affidavits, and briefs filed in connection herewith, and having heard counsels' oral arguments, finds that the defendants' motions to dismiss the second count of the complaint should be granted.

## I.

Public Act 821 authorizes a restructuring of the existing CRPA and CRCOG by providing that new regional councils of governments may be created by the adoption of Public Act 821 by the consent of the legislative bodies of at least sixty percent of the towns within a given planning region.[7] According to

---

**6.** The first count of the complaint alleges that the Capitol Region Planning Agency (CRPA) has consistently failed to comply with federal statutes and administrative regulations which require it to provide for low income and minority group representation in regional planning processes, to adopt and enforce an affirmative program for equal employment and open housing, and to consider the problems of minority groups in its evaluations of, and recommendations on, federally funded planning projects. The first count of the complaint also alleges that, despite the CRPA's non-compliance with federal statutes and Department of Housing and Urban Development regulations and guidelines, the defendants Thompson and Romney failed to withdraw certification of the CRPA as the regional Area Planning Office (A.P.O.), the agency through which federal grants are disseminated, and have continued to permit it to receive federal planning grants.

In response to the allegations contained within count one, an investigation was conducted by the Department of Housing and Urban Development. The "Final Investigation Report," which has been filed with this Court, concludes that there is support for the plaintiffs' allegations that the CRPA failed to comply with federal equal opportunity guidelines, the Civil Rights Acts of 1964 and 1968, and Department of Housing and Urban Development regulations with respect to citizen involvement. The report also concludes that the Hartford Area Office of the Department of Housing and Urban Develop-

ment, by failing to apply sanctions for CRPA's non-compliance with federal statutes and regulations designed to ensure equality of participation and involvement, "acted in a way which condoned the exclusion of minorities from the CRPA Planning program."

As a result of that investigation, Department of Housing and Urban Development has withdrawn certification of the CRPA as the Area Planning Office and rescinded its federal funding "in order to implement Departmental policy with respect to the Equal Opportunity requirements of the Comprehensive Planning Assistance Program, and the provisions of Title VI and Title VIII of the pertinent Civil Rights Act."

**7.** Connecticut General Statute § 4-124j provides:

"Within any planning region of the state a regional council of governments may be created by the adoption of sections 4-124i to 4-124p, inclusive, by ordinance of the legislative bodies of not less than sixty per cent of all towns, cities and boroughs within such planning region entitled to membership on such council as hereinafter provided. Where any regional council of elected officials, or a regional planning agency, exist within a planning region, a regional council of governments may be created either as hereinabove provided, or by the adoption of said sections by resolution of any such regional council or councils of elected officials and any such re-

that Act, each member town of the new CRCOG would be entitled to one representative on the council, who would be the chief elected official of that town.[8] The newly formed CRCOG would succeed to all the statutory powers and duties of the existing CRPA and CRCOG, with the existing CRPA losing its independence and becoming a subdivision of the new CRCOG.[9]

The City of Hartford, one of the twenty-nine towns in the Capitol Region Planning Area and a member of the existing Capitol Region Council of Governments, allegedly represents the following percentage of the statistical bases of the CRPA and CRCOG:

|  |  | CRPA | CRCOG |
|---|---|---|---|
| 1. | Total population | 23.7% | 25.9% |
| 2. | Black population | 86.8% | 88.8% |
| 3. | Public school population | 19.1% | 21.0% |
| 4. | Minority (Black and Spanish surname) population | 84.3% | 86.0% |
| 5. | Low and moderate public housing | 72.9% | 73.7% |
| 6. | Minority residents in public housing | 99.2% | 99.2% |
| 7. | Grand list value | 23.1% | 25.8% |
| 8. | Retail sales | 27.4% | 29.8% |
| 9. | Taxable motor vehicles | 16.5% | 18.2% |
| 10. | Dwelling units | 28.8% | 31.0% |
| 11. | Total employment | 40.9% | 44.0% |
| 12. | Manufacturing employment | 20.1% | 22.4% |

At the present time, the City of Hartford has five representatives on the 66

member policy making delegation of the existing CRPA (approximately 8% of the representation on that body). Two of Hartford's representatives are Black, one is Puerto Rican. The thrust of the plaintiffs' argument is that a restructuring of the CRCOG and CRPA in accordance with Public Act 821 would result in a gross under-representation of the City of Hartford, since representation on the new CRCOG would make no adjustment for population variations among member towns. Thus, the City of Hartford with a population of approximately 160,000 persons, or nearly 24% of the Regional population, would have only one representative on the new CRCOG, the same as, for example, the Town of Andover whose population is approximately 2000 persons. Moreover, by diluting Hartford's representation on the CRCOG, there would be a consequent dilution of the representation of low income and minority groups which are centered in that city.

The plaintiff Education/Instruccion complains that it will be irreparably harmed by a restructuring of the CRPA and CRCOG, in that such a restructuring would result in the under-representation of the low income and minority groups which it purportedly represents.

gional planning agency, and the ratification of any such resolution by ordinance of the legislative bodies of not less than sixty per cent of all such towns, cities and boroughs. All towns, cities and boroughs within a planning region shall be entitled to membership in such council, including any city or borough with boundaries not coterminous with the boundaries of the town in which it is located. Any nonmember town, city or borough entitled to membership may join the council by the adoption of said sections by ordinance of its legislative body. Any member town, city or borough may withdraw from the council by adoption of an appropriate ordinance of its legislative body to become effective on the date of such adoption; provided, however, that any such withdrawing member shall be obligated to pay its pro rata share of expenses of operation and pro rata share of funds committed by the council to active programs as of such date of withdrawal."

8. Connecticut General Statute § 4–124k provides:

"Each member of a regional council of governments shall be entitled to one representative on the council who shall be the chief elected official of such member, or in the absence of any such chief elected official, an elected official appointed in the manner provided by ordinance of the legislative body of such member. Each representative of a member shall be entitled to one vote in the affairs of such council."

9. Connecticut General Statute § 4–124l provides:

"(c) Upon the expiration of the transitional period provided for under subsection (b) of this section, the regional council of governments shall succeed to and be responsible for all of the rights, privileges and obligations, whether statutory or contractual, of any regional council of elected officials, or regional planning agency, or both, within the planning region, and no regional council of elected officials nor planning agency shall be subsequently created within such planning region, except as provided in subsection (d) of this section."

The plaintiffs Ramos and Hinds complain that their votes will be unconstitutionally diluted when they participate in the election of the "chief elected official" of the City of Hartford, who will then automatically become their representative on the new CRCOG by virtue of his office. The plaintiff Dixon joins with the plaintiff Ramos in complaining that a restructuring of the CRCOG would result in the improper representation of the respective minority groups of which they are members. Accordingly, the plaintiffs seek a declaratory judgment that Public Act 821 violates the Equal Protection Clause of the United States Constitution as it applies to the Capitol Region, and injunctive relief prohibiting the defendant Towns from ratifying that Act.[10]

## II.

The issue before the Court at this time is not whether federal statutes or regulations of the United States Department of Housing and Urban Development demand fair representation of minority groups on policy making bodies which control or significantly affect the disposition of federal monies. The sole issue is whether the fourteenth amendment to the United States Constitution requires that the proposed regional council of governments authorized under Connecticut General Statute § 4–124j be apportioned on a "one man-one vote" basis. This Court holds that it does not.

Reduced to its simplest form, the plaintiffs' argument is that the proposed regional council of governments for the Capitol Region creatable under Connecticut General Statute § 4–124j would be an "elective body" under the rationale of Bianchi v. Griffing, 393 F.2d 457 (2d Cir. 1968); charged with the performance of governmental functions within the meaning of Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed. 2d 45 (1968) and Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970); and therefore subject to the "one man-one vote" requirement set forth in Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L. Ed.2d 481 (1964) and Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The Court finds this argument to be without merit.

In Bianchi v. Griffing, *supra,* the Court of Appeals faced the issue of whether the one man-one vote requirement was applicable to a County Board of Supervisors which possessed "general governmental powers" and was "representative of most of the general governing bodies of American cities . . . ," but whose membership consisted of "delegates" from each of the ten towns in the county who had previously been elected "Town Supervisors" in locally held popular elections. *Id.* at 460–461. Emphasizing that the County Board was in reality a local government, the Court held that "the mandate of the equal protection clause cannot be effectively circumscribed by a local legislative body with general governmental powers . . . simply by labeling [its] members 'delegates.'" *Id.* at 461.

While dictum in *Bianchi* lends some support to the plaintiffs' argument that a citizen entering the voting booth to choose the chief elected official of his municipality would at the same time be selecting that municipality's "delegate" to the CRCOG, thus making that proposed body elective in the practical sense, two recent United States Supreme Court decisions, Salyer Land Co. v. Tulare Lake Basin Water Storage District, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973) and Associated Enterprises Inc. v. Toltec Watershed Improvement District, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973), indicate that applicability of the one man-one vote principle does not necessarily follow from a determination that a particular body is

---

10. To date at least three towns within the Capitol Region have ratified Public Act 821. They are the Towns of Wethersfield (April 3, 1972); Farmington (May 16, 1972); and Glastonbury (February 28, 1972).

constituted through an elective, rather than an appointive, process. *Cf.* People ex. rel. Younger v. County of El Dorado, 5 Cal.3d 480, 96 Cal.Rptr. 553, 487 P.2d 1193, 1209 (1971). It is therefore unnecessary to consider the defendants' argument that *Bianchi* was superseded by Hadley v. Junior College District, *supra,* and that the members of the CRCOG, like those serving on the Board in Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967) would be appointive.

Connecticut General Statute § 4–124j provides that the CRCOG would be voluntary and that a participating munipality could withdraw at any time. To this extent it is similar to the Junior College District considered in *Hadley.* However, the CRCOG is distinguishable from the District considered in *Hadley* and the Board of County Commissioners to which the "one man-one vote" principle was held applicable in Avery v. Midland County, *supra,* in at least one crucial and controlling respect, for in each of those cases, a local unit of government exercised general governmental powers and performed vital governmental functions.

The Board of Commissioners in *Avery* established and maintained a county jail, made contracts, built roads and bridges, administered the county's welfare system, performed duties in connection with elections, set tax rates, issued bonds, adopted the county's budget, built and ran hospitals, airports, and libraries, established a housing authority, fixed school district boundaries, and determined election districts. *Avery, supra,* 390 U.S. at 476–477. While the powers and functions of the College District considered in *Hadley* were not "fully as broad" as those of the Midland

County Commissioners, they were nevertheless sufficiently general and important to fall within the *Avery* decision. They included the power to issue bonds, levy and collect taxes, pass on petitions to annex school districts, and to acquire private property through condemnation. *Hadley, supra,* 397 U.S. at 53.

By contrast, the powers and functions of the proposed CRCOG are merely to be informed, to advise, comment, and propose. As the successor to the responsibilities and duties of the existing planning agency and council of elected officials,[11] its functions would include the rendering of "advisory reports," recommendations, and development plans concerning grants-in-aid of municipal programs;[12] the studying of proposed zone changes within five hundred feet of the boundary of another municipality, and the issuance of a "purely advisory" impact report;[13] the formulation of development plans and recommendations for the general use of land as "in the opinion of the agency" would be beneficial to the area, and the providing of technical assistance to municipalities within the region;[14] the preparation of "advisory reports" on the regional significance of proposed agreements and compacts between member municipalities;[15] and the issuance of reports on the compatability between regional planning goals and proposed municipal development plans.[16] Such powers and functions are neither qualitatively nor quantitatively comparable to those considered by the Supreme Court in *Hadley* or *Avery.*

Moreover, the proposed CRCOG lacks even those few typical governmental powers which the Court in Salyer Land Company v. Tulare Lake Basin Water

---

11. Conn.Gen.Stat. §§ 4–124d and 4–124m.

12. Conn.Gen.Stat. §§ 7–131d and 7–131e.

13. Conn.Gen.Stat. § 8–3b. Also see § 8–26b.

14. Conn.Gen.Stat. § 8–35a.

15. Conn.Gen.Stat. § 8–35d.

16. Conn.Gen.Stat. § 8–191. Also see § 8–207.

Storage District, 410 U.S. at 728 n. 7, found to be insufficient to constitute "general governmental powers." And like the Tulare Lake District, the CRCOG would provide no

> "general public services such as schools, housing, transporation, utilities, roads or anything else of the type ordinarily financed by a municipal body. . . . There are no . . . shops, hospitals or other facilities designed to improve the quality of life within [its] . . . boundaries and it does not have a fire department, police, buses, or trains." 410 U.S. at 728.

Certainly, the maintenance of a Capitol Region Crime Squad, a voluntary association of the law enforcement agencies of the several constituent municipalities, whose function is to provide a source of common experience and expertise and to foster a spirit of cooperation in investigating regional crime problems, cannot be characterized as a traditional and vital governmental function.

To the extent that the CRCOG is able to provide a forum for an interchange of ideas and an atmosphere conducive to the development of solutions to regional problems which know no geographic boundaries, its importance should not be minimized. But this does not bar recognition of the fact that it would be essentially advisory and non-governmental in both purpose and function, and the type of body which need not be apportioned on a strict numerical basis. As such, the CRCOG represents the kind of flexible experimentation which the Supreme Court has consistently recognized as being both desirable and constitutionally permissible. *Sailors, supra,* 387 U.S. at 110–111; *Hadley, supra,* 397 U.S. at 59; Salyer Land Co. v. Tulare Lake Basin Water Storage District, *supra.*

Accordingly, the defendants' motions to dismiss the second count of the complaint should be granted, and it is

So ordered.