**EDUCATION/INSTRUCCION, INC., et al., Plaintiffs-Appellants,**

**v.**

**Thomas MOORE, Individually and as Chairman of Capitol Regional Planning Agency, et al., Defendants-Appellees.**

**No. 520, Docket 73–2507.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1974.

Decided Aug. 21, 1974.

Certiorari Denied Jan. 13, 1975. See 95 S.Ct. 783.

Igor I. Sikorsky, Jr., Hartford, Conn., for plaintiffs-appellants.

Ralph G. Elliot, Hartford, Conn. (Alcorn, Bakewell & Smith, Hartford, Conn., on the brief), for defendants-appellees.

Before LUMBARD, OAKES and TIMBERS, Circuit Judges.

PER CURIAM:

On this appeal from an order entered in the District of Connecticut, T. Emmet Clarie, Chief Judge, dismissing a complaint in a civil rights action which sought declaratory and injunctive relief, the sole issue is whether Public Act 821 enacted by the Connecticut General Assembly in 1971, Conn.Gen.Stat. §§ 4–124i through 4–124p (Supp.1972), which authorizes regional councils of government,

denies plaintiffs the equal protection of the laws because such council in the Hartford area is not apportioned on a one man, one vote basis. The district court held that there was no denial of equal protection and dismissed the complaint. We affirm.

Plaintiffs are a non-profit Connecticut corporation organized for educational, charitable and cultural purposes, together with three individual citizens of Connecticut, two of whom reside in the City of Hartford and one in the Town of Windsor. Defendants are the Chairman of the Capitol Regional Planning Agency (CRPA), the Chairman of the Capitol Region Council of Governments (CRCOG), the Secretary of the United States Department of Housing and Urban Development (HUD), the Regional Director of that Department and twenty-nine individuals who are the chief elected officials of the twenty-nine towns which comprise the Capitol Region (i. e. the Hartford area).

In view of the district court's adequate statement of the facts and the controlling law, 379 F.Supp. 1160, it is sufficient for our purpose merely to state the claims asserted and the district court's rulings thereon with which we agree.

Plaintiffs challenge on equal protection grounds Public Act 821 which provides for the restructuring of the existing CRPA and CRCOG to create a new regional council of government if approved by at least 60% of the towns within the planning region—here, the Hartford area. Each member town of the new council is entitled to one representative on the council, such representative to be the chief elected official of that town.

The gravamen of plaintiffs' claim is that the Act's restructuring of the present regional bodies to create a new regional council in the Hartford area will result in under-representation of the City of Hartford on the new council. In the past Hartford has had five representatives on CRPA, or 8% of that body's membership. On the new council Hartford will have four representatives. A 1973 amendment gave Hartford four representatives on the council instead of the one initially provided,[1] the three additional council members to be appointed by Hartford's city council. Special Act No. 73–79 .(effective May 14, 1973). Hartford has a population of approximately 160,000, or about 24% of the regional population. Thus, plaintiffs argue, Hartford's vote will be greatly diluted, as compared for example with the Town of Andover, whose population is approximately 2,000, which will have one vote. Plaintiffs' claim in essence is that the legislature's failure to apportion the new regional council on a one man, one vote basis denies them the equal protection of the laws in violation of the Fourteenth Amendment.

Application of the one man, one vote principle of Reynolds v. Sims, 377 U.S. 533 (1964),[2] to various units of government in the State of Connecticut is no stranger to the Connecticut district court. E. g., Butterworth v. Dempsey, 229 F.Supp. 754 (D.Conn.1964) (state legislature), aff'd sub nom. Pinney v. Butterworth, 378 U.S. 564 (1964), on remand, 237 F.Supp. 302 (D.Conn.1964 and 1965); Kapral v. Jepson, 271 F. Supp. 74 (D.Conn.1967) (city board of aldermen); Giordano v. Amity Regional High School District #5, 313 F.Supp. 403 (D.Conn.1970) (regional board of education).

The critical question raised by defendants' motion to dismiss the complaint for failure to state a claim upon which

---

1. The statement in the district court opinion that Hartford would have one representative on the new council referred to the provision in the Act prior to the 1973 amendment.

2. Reynolds v. Sims implemented the Supreme Court's earlier holding in Baker v. Carr, 369

U.S. 186 (1962), that an assertion of constitutional right, as impaired by malapportionment according to population of representatives in state legislatures, presented a justiciable issue to be determined by the federal courts.

relief can be granted, Fed.R.Civ.P. 12(b)(6), is whether the proposed regional council of government for the Hartford area is subject to the one man, one vote requirement. The district court held that it is not. We agree.

The statute in question does not provide for elective bodies.[3] The councils do not exercise general governmental powers, nor do they perform governmental functions, within the meaning of Hadley v. Junior College District, 397 U.S. 50 (1970), and Avery v. Midland County, 390 U.S. 474 (1968). Indeed, the councils do not have even the minimal governmental powers found insufficient to invoke the one man, one vote principle in the Supreme Court's most recent decisions in Salyer Land Co. v. Tulare Water District, 410 U.S. 719, 728 n. 7, 729 (1973), and Associated Enterprises, Inc. v. Toltec District, 410 U.S. 743 (1973).

The powers and functions of the councils are essentially to acquire information, to advise, to comment and to propose.[4] As Judge Clarie aptly put it:

"To the extent that the [council] is able to provide a forum for an interchange of ideas and an atmosphere conducive to the development of solutions to regional problems which know no geographic boundaries, its importance should not be minimized. But this does not bar recognition of the fact that it would be essentially advisory and non-governmental in both purpose and function, and the type of body which need not be apportioned on a strict numerical basis. As such, the [council] represents the kind of flexible experimentation which the Supreme Court has consistently recognized as being both desirable and constitutionally permissible."

We agree.

We affirm on the well reasoned opinion of Judge Clarie below. 379 F.Supp. 1160 (D.Conn.1973).[5]

Affirmed.

---

3. The district court did not find it necessary to determine whether members of the council are elected or appointed, since the council clearly does not exercise general governmental powers nor does it perform governmental functions.

We do note, however, that at least some members of the council do not automatically become council members by virtue of their election to office in their respective towns. The three additional members from Hartford, referred to above, are appointed by the city council under Special Act 73–79. And at least the members from West Hartford, Wethersfield and Glastonbury are selected by the respective town councils after the voters elect the councils themselves.

4. We agree with the district court's conclusion that there was no issue before that court on the present record as to whether federal statutes or regulations of HUD require fair representation of minority groups on policymaking bodies which control or significantly affect the disposition of federal funds. The councils are not conduits of federal funds, but only of information. Since federal certification of the councils here involved has been terminated, regulatory compliance was not an issue before the district court and it is not an issue before us.

5. We note that our dissenting colleague addresses himself primarily to the question of whether a three-judge court should have been convened below. Arguing that such a court should have been convened, the dissent relies heavily upon our recent decision in Rosenthal v. Board of Education, 497 F.2d 726 (2 Cir. 1974). The dissent's reliance on Rosenthal, in our view, is misplaced. In Rosenthal, there was no question that the body involved performed substantial governmental functions ("There seems no doubt, as recognized by the district court, that the powers of a central high school district include substantial governmental functions." 497 F.2d at 728). Here the proposed regional councils do not have general governmental powers and do not perform governmental functions.

It is axiomatic that a single judge may dismiss a complaint which attacks the constitutionality of a state statute and seeks an injunction against its enforcement if he finds that the complaint presents no substantial constitutional issue. E. g., Goosby v. Osser, 409 U.S. 512 (1973). Here the recent decisions of the Supreme Court in Salyer and Associated Enterprises "inescapably render the [plaintiffs'] claims frivolous." 409 U.S. at 518. The district court therefore properly dismissed plaintiffs' complaint without convening a three-judge court.

OAKES, Circuit Judge (dissenting):

I respectfully dissent.

It seems to me that this is another reapportionment case just like Rosenthal v. Board of Education, 497 F.2d 726 (2d Cir. 1974). There, following Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1970), and Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L. Ed.2d 577 (1974), we held that the constitutional claims made were not " 'so attenuated and unsubstantial as to be absolutely devoid of merit', Newburyport Water Co. v. Newburyport, 193 U. S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904), or 'no longer open to discussion', McGilvra v. Ross, 215 U.S. 70, 80, 30 S.Ct. 27, 54 L.Ed. 95 (1909)." 497 F.2d at 729. In the present case as well injunctive relief is sought. The Connecticut statutes that are involved are of state-wide applicability. For example, Conn.Gen.Stat.Ann. § 4–124c (Supp. for 1974), a provision attacked by appellants, prescribes the formation and composition of all regional councils of elected officials "[w]ithin any planning region of the state . . . . " Sections 4–124i–124p, the principal provisions appellants challenge, relate to the formation and composition of regional councils of governments established "[w]ithin any planning region of the state . . . . " The sections relating to regional planning agencies, also under attack here, likewise are state-wide in applicability, again relating to "any planning region of the state . . . . " E. g., Conn.Gen.Stat.Ann. § 8–31a (Supp. for 1974).

Since the question, for three-judge court purposes, is whether a substantial constitutional issue is presented, Rosenthal v. Board of Education, supra, a discussion of the merits of the plaintiff-appellant's claim is necessary.

On the crucial question whether the new Council of Governments established in the Hartford area (COG) pursuant to the above state provisions exercises general governmental powers within the ambit of Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), and Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L. Ed.2d 45 (1970), it seems to me that neither the COG nor its predecessor bodies, the Capitol Region Planning Agency (CRPA) and Capitol Region Council of Governments (CRCOG),[1] can be considered solely in the light of the statutory authority delegated by the State of Connecticut, as the majority considers them. Rather, we must look to the overall role of the agency in question in the federal system as a whole. A regional planning body such as COG, though a creature of state law, is established with a view to its functions under federal law and the federal system.[2] A regional planning agency cannot be looked at while wearing state-oriented blinders when one of its principal purposes is to play a substantial role in the decision-making process involved in the dispensation of federal funds affecting all the citizens of the affected area.

The test of performing governmental powers must be one based on economic reality, not the mechanical application of nineteenth century municipal law. For example, 42 U.S.C. § 3334 requires that any application for a federal loan or grant for the planning or construction of hospitals, libraries, sewers, water and sewage treatment facilities, highways, mass transit, airports or other transportation facilities, recreation, or open-space development must be submitted for review to an areawide agency, which in this case would be COG. COG may then comment and make its recommendations whether the application should

---

1. The COG was the result of the legislative consolidation under Conn.1971 Public Act No. 821, Conn.Gen.Stat.Ann. §§ 4–124i–124p, of the then existing CRPA and CRCOG, and its composition is principally the object of attack in this suit.

2. It is not mere coincidence that COG was created meeting the federal requirements for planning agencies which are to serve as Area Planning Offices and thereby qualify for large federal planning grants.

be granted or not. 42 U.S.C. § 3334(b)(1). Primary emphasis is given to whether the project would be consistent with comprehensive planning and whether the project contributes to the fulfillment of such planning. *Id.* Supplementary grants, amounting to as much as any original grant, can be made, but only when there is a showing that the project will be "carried out in accord with areawide [comprehensive] planning and programming." 42 U.S.C. § 3335(b)(3), (c)(1). In making the determination whether a project is in accord with an areawide plan, "the Secretary shall obtain, and give full consideration to, the comments of [the areawide planning bodies]." 42 U.S.C. § 3335(d). In other words, federal law provides a carrot and stick approach to insure that local governments comply with the area plan. Thus, while COG may have no statutory power under state law to affect local governments, being limited to planning functions, in light of the federal statutes COG's plans themselves can affect local government's abilities to receive federal funds and COG's comments on localities' applications may be altogether determinative.

Not only does the Connecticut COG have an abillity to affect the approval of individual municipalities' applications for grants by the exercise of its planning function, but also the local municipalities are dependent upon the COG for establishment of a proper plan in the first instance. Thus, if COG does not do its job—failing to create an areawide plan or creating an areawide plan which does not meet federal requirements— even a non-member municipality's application for a grant for water and sewer facilities or an open space land program may be disapproved for failure to be part of a proper areawide plan. *See* 42 U.S.C. § 1500b, 3102(c); Appendix 4, Comprehensive Planning Assistance Requirements and Guidelines for a Grant, CPM 6041.1A, U.S. Dept. of Housing and Urban Development (1972).

This control of the purse strings for the building of such a large assortment of facilities is essentially "governmental" in nature in a day and age when municipalities are frequently financially incapable of total self-reliance. In *Hadley, supra,* the power to tax and spend was an important governmental power had by the district; in the year 1974 having a principal hand on the faucet of federal grants must be treated as at least as important as the local power to tax, especially where federal grants may pay up to 80 per cent of facilities' costs, especially since in so many cases the municipalities' powers to tax are often being exercised to their outer limits.

Beyond this, the COG has important powers under, *e. g.,* the Intergovernmental Cooperation Act, 42 U.S.C. § 4201 et seq., and NEPA, 42 U.S.C. § 4321 et seq. In this instance it also happens to operate a regional crime squad (with the help of LEAA money), engages in joint purchasing efforts, and otherwise performs important functions that may properly be characterized as governmental in nature.

I am fully cognizant that the water district cases, Salyer Land Co. v. Tulare Lake Basin Water Storage District, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), and Associated Enterprises v. Toltec Watershed Improvement District, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973), indicate to many that the Supreme Court is backing away from Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and its progeny. I think these cases can be read, however, as dealing only with special purpose districts; even though the water districts in *Salyer* and *Toltec* had broad governmental powers, they were for a limited or special purpose only, relative to the cost and use of water. *See* 59 Cornell L.Rev. 687 (1974). Here, while the COG does not have the direct power to tax, its ability to influence or determine the amount, type, and location of virtually every public service is "governmental" power in its truest sense.

None of this, of course, is to say that there must be the same precision in formulating a proper system of apportion-

ment of representation on a regional planning agency as in a state legislature, just as state legislative reapportionment is not subject to the same strict standards as congressional reapportionment. *E. g.*, White v. Regester, 412 U.S. 755, 763, 93 S.Ct. 2342, 37 L.Ed.2d 314 (1973). Nor is it to fail to recognize the point underlying Mr. Justice Harlan's dissent in *Avery*, 390 U.S. at 491–498, 88 S.Ct. 1114, that in a given case a regional planning agency may be of more concern to the rural members thereof than to the urban residents involved.[3] These are considerations which could be taken into account, however, in establishing a formula which more equally protects or represents the people of Hartford than the one ultimately adopted, under the threat of this law suit, by the Connecticut Assembly by special act.[4] Under the majority decision today, regional planning agencies for metropolitan areas may be weighted in representational makeup one-sidedly against the urban area in favor of the outlying suburbs and towns, and thus the central cities of states with a state legislature dominated by rural or suburban towns left behind the door when facilities or services requiring federal funding are established.

While the district court did not reach the question and the majority mentions it only in passing, a subsidiary question is whether, since there is no direct election of the members of the new COG as such, this case falls within the rule of Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), that makes the one-man one-vote doctrine of Reynolds v. Sims, *supra*, inapplicable to non-elected officials. The Connecticut statutes, however, make it very clear the COG will be basically composed of the "chief elected official" from each member town or city. Conn. Gen.Stat.Ann. § 4–124k.[5] The "chief elected official" means "the highest ranking elected governmental official of any town, city or borough," and the term "elected official" means "any selectman, mayor, alderman or member of a common council or other similar legislative body . . . or warden of burgess . . . ." Conn.Gen.Stat.Ann. § 4–124i (Supp. for 1974). While the case is one not precisely controlled by precedent in this respect, it seems closest to Bianchi v. Griffing, 393 F.2d 457 (2d Cir. 1968), where persons elected as town supervisors automatically became members of the county board of supervisors. Here as there the fact is that these officials are *elected*, they are not appointed, and the one office (that of "chief elected official") carries with it automatic membership on the regional council.

---

3. There is no indication of any sort that this is the case here.

4. In the case of Hartford (on behalf of the citizens of which the plaintiff-appellants instituted this suit), with a population of approximately 160,000 or 24 percent of the "Capitol Region," it had five representatives of the 66 on the old CRPA. Before this suit was brought the Hartford representation on the new COG would have been one of 29, just the same as Andover's (population 2,000). Thereafter the Connecticut legislature passed Special Act No. 73–79 (eff. May 14, 1973) providing Hartford with three additional representatives to COG who are appointed.

5. There is an exception where a town has no "*chief* elected official," in which case the representative to COG is chosen from the elected officials by the legislative body of the town. Conn.Gen.Stat.Ann. § 4–124k (Supp. for 1974). Here, however, only three of the 29 towns comprising the so-called Capitol Region have no "chief elected official." Despite this exception and that specially made in the case of Hartford, the COG is in substantial part elective in nature and composed of elected members. *See* Bianchi v. Griffing, 393 F.2d 457 (2d Cir. 1968). *See also* Lodico v. Board of Supervisors, 256 F.Supp. 440 (S.D.N.Y.1966) (reapportionment of County Board of Supervisors ordered where members of Board became such upon election to post of Supervisor by individual towns), approved on this point by Abate v. Mundt, 403 U.S. 182, 183, 187, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971).

From all this it seems clear to me that there is a sufficiently substantial question of constitutionality as to require the convening of a three-judge court, *see* Rosenthal v. Board of Education, *supra*.