JOSEPH T. SHARKEY (Substituted in the Place and Stead of JOHN CASHMORE), Individually and as Vice-Chairman of the Council Created under the New York City Charter, Respondent, v. FIORELLO H. LAGUARDIA, Individually and as Mayor of the City of New York, and Others, Constituting the Board of Estimate, and Another, Appellants.*

First Department, May 17, 1940.

* Revg. 173 Misc. 567.

*William C. Chanler* of counsel [*Leo Brown* with him on the brief; *William C. Chanler, Corporation Counsel,* attorney], for the appellants.

*George Rosling* of counsel [*Rubenstein & Rosling,* attorneys], for the respondent.

CALLAHAN, J. Plaintiff is vice-chairman of the city council of the city of New York. Defendants are the members of the board of estimate of the city of New York and the deputy mayor of the city of New York.

The issue involved herein concerns the right of the vice-chairman of the city council to sit in the board of estimate during absences of the mayor from the city, where such absences continue for less than thirty days and where the mayor has designated the deputy mayor to sit in his place during such temporary absences. The vice-chairman of the city council claims that such designations of the deputy mayor are ineffective after the mayor leaves the city; that the president of the council is required to act as the mayor, and to sit for the mayor in the board of estimate during such absence of the mayor from the city; and that it follows that the vice-chairman of the council is to sit as a member of the board of estimate in the place of the president of the council at these times.

The question involved is one of statutory construction. It arises because the relevant provisions of the new City Charter with respect to the rights and duties of the various officers involved during such absences are not entirely clear.

Section 9 of the New York City Charter provides for the appointment of a deputy mayor, and describes the powers and duties which may be delegated by the mayor to said deputy. Among other things, it states: " The mayor may appoint a deputy mayor who shall possess such of the powers of the mayor and for such times and subject to such conditions as shall be expressed in written authority to be signed by the mayor, excepting the power of appointment or removal, the power to approve or disapprove local laws or resolutions, the power to act as a magistrate and the power to hold any hearing which the mayor is required by law to hold personally. The deputy mayor, if thereunto authorized by such written authority, may act in the place of the mayor as a member of the board of estimate or of any other board, body or committee but not as chairman thereof."

Section 10 of the Charter describes the circumstances under which the president of the council shall act as mayor. Its relevant provisions are as follows:

" § 10. a.   The president of the council shall act as mayor " (1) whenever there shall be a vacancy in the office of mayor, or " (2) while the mayor shall be prevented from attending to the duties of his office by reason of sickness, absence from the city or suspension from office.

" b. The president of the council, while acting as mayor in consequence of the mayor's sickness or absence from the city, shall not, until such sickness or absence shall have continued thirty days, exercise any power of appointment to or removal from office, or any power lawfully delegated by the mayor to the deputy mayor, whether before or after the commencement of such sickness or absence; and shall not, until such sickness or absence shall have continued nine days, sign, approve or disapprove any local law or resolution unless the period during which the mayor may act thereon would expire during such nine-day period, in which case the president of the council shall have the power to disapprove the same within forty-eight hours before the time to act thereon expires."

Section 29 of the Charter creates the office of vice-chairman of the city council. It provides: " * * * The council shall elect from among the councilmen a vice-chairman, who shall possess the powers and perform the duties of the president of the council when the president is absent or while he is acting as mayor, or when a vacancy occurs in said office, and he shall, during such times, retain his right to vote and shall be a member of every board of which the president of the council is a member by virtue of his office."

The provisions concerning the conduct of meetings of the board of estimate are found in section 63 of the Charter. This section requires that at meetings of said board " the mayor, or in his absence the president of the council, shall preside  *  *  *."

The question presented to us in this action for a declaratory judgment relates only to absences of the mayor for periods of less than thirty days.

Special Term has held that during such absences the provisions of section 29 of the Charter, read in conjunction with those of section 10, require that the vice-chairman of the city council be granted a seat in the board of estimate, even though the mayor has authorized the deputy mayor to sit in his place.

We do not agree with that construction. We think that it fails to give due effect to some of the Charter provisions.

One of the powers which the mayor is authorized to delegate to the deputy mayor is the right to sit as a member of the board of estimate in the mayor's place. There is no express limitation on the right of delegation which would confine its exercise to occasions when the mayor is within the confines of the city of New York; nor do we find any legislative intention to impose such a limitation. In fact we find language in the Charter which indicates a contrary intention. For instance, we find that the mayor is authorized to delegate the designated powers to his deputy either before or after commencement of his, the mayor's absence. This provision would be rendered meaningless if the delegated power to sit ceased during the absence of the mayor from the city, for under any such construction a power which might be delegated after the absence had commenced could not be exercised until the absence ceased.

The president of the council, by express provision of subdivision b of section 10 of the Charter, is not permitted to exercise any powers of the mayor which are lawfully delegated to the deputy mayor. Read together these provisions clearly indicate the intention to authorize the mayor to deputize the deputy mayor to sit in the board of estimate during the mayor's absence from the city.

That it was the intention to permit the mayor to delegate to his deputy the right to sit in the board of estimate during any sickness or absence of less than thirty days would also seem to be indicated by reason of the provisions of section 9. This section expressly excepts certain powers of the mayor, and provides that they may not be delegated to the deputy mayor. If it were intended that the right to deputize should cease during the mayor's sickness or absence, it would seem that some such limitation would be noted. Instead, we find that the section provides that the extent, the duration and the conditions of this grant of power shall be expressed in the writing signed by the mayor. No other limitation is therein specified.

We think it was the intention of the drafters of the Charter to provide a plan whereby the mayor might authorize his deputy to sit for him in the board of estimate during his absence due to sickness or other causes, whether such absences were merely from meetings, or were absences from the city, if the absences were for less than thirty days. In such instances the president of the council sits in the board of estimate in his own right, and not because he is acting as mayor. The requirement of the Charter that the president of the council is to act as the presiding officer of the board of estimate meetings during the mayor's absence does not conflict with this construction. The president of the council

presides on such occasions — not by reason of the fact that he is acting as mayor — but because the statute directs him to do so when the mayor is absent.

The provisions of section 10 concerning the right of the president of the council to act for the mayor during the latter's absence from the city, and those of section 63 concerning his right to preside at meetings of the board of estimate, are reconcilable with the right of the deputy mayor to sit in the board of estimate during the absence of the mayor. During these absences the president of the council sits as a member of the board, though not as chairman, and casts his own votes. The deputy mayor sits for, and casts the votes of the mayor. Under the circumstances, there is no vacant seat for the vice-chairman of the council. The provision that the president of the council is to sit for the mayor during the latter's absence is subject to the exception that he may not do so where the mayor has lawfully designated that power to his deputy.

A different rule would seem applicable when a mayor is suspended from office. The powers which a mayor is authorized to grant to his deputy by section 9 of the Charter are the powers which he may designate in writing. It is apparent that no mayor may grant powers continuing beyond the date of his suspension from office. That this was the intention of the drafters of the Charter is indicated by a reading of section 10, which limits the powers of the president of the council while acting as mayor during the mayor's sickness or absence, but places no limitation on such powers while he is acting during a mayor's suspension. During such suspension, the president is given all the powers of the mayor.

Construed in the manner indicated, all parts of the Charter are given due effect.

The judgment and order should be reversed, plaintiff's motion for judgment on the pleadings denied, and defendants' cross-motion for judgment on the pleadings, dismissing the complaint, granted.

UNTERMYER, DORE and COHN, JJ., concur; MARTIN, P. J., dissents and votes to affirm.

MARTIN, P. J. (dissenting). On January 1, 1938, the mayor appointed Henry H. Curran as deputy mayor. On January 3, 1938, he executed a certificate authorizing the deputy mayor to act in his place as member of the board of estimate. On September 22, 1938, the board of estimate was in session while Mayor LaGuardia was in the city of Los Angeles, Cal. On December 15, 1938, the board of estimate was in session while the mayor was in the city of New Orleans, La. On January 19, 1939, the board of estimate was in session while the mayor was in Boston, Mass.

The plaintiff, vice-chairman of the council, an officer created by the New York City Charter, applied to the court for a declaration of his rights by reason of the mayor's absence on said dates from the city and State of New York. The plaintiff contended that, owing to the mayor's absence, the president of the council became the acting mayor, that in consequence the plaintiff as vice-chairman was under a necessity to exercise the powers and to perform the duties of the president of the council including the duty of sitting as member of the board of estimate. The plaintiff attempted to sit as such member on those dates but asserts that a majority of the board prevented him from so doing. A declaratory judgment was, therefore, prayed for in order to provide for possible future similar situations. The Special Term granted the relief asked for in the complaint.

The judgment provides as follows:

" Adjudged and declared, that when the President of the Council is authorized to act as Mayor or is the Acting Mayor, the Vice Chairman is possessed of all the powers and obligated to perform all the duties of the President of the Council; and it is further

" Adjudged and declared, that the President of the Council is authorized to act as Mayor and becomes the Acting Mayor whenever there is a vacancy in the office of the Mayor or while the Mayor is prevented from attending to the duties of his office by reason of sickness or while the Mayor is absent from the City, or suspended from office; and it is further

" Adjudged and declared, that whenever the President of the Council is authorized to act as Mayor, or is acting as Mayor, the Vice Chairman of the Council shall sit as a member of the Board of Estimate and possess all the powers and perform all the duties of such member of the Board of Estimate, which the President of the Council possesses and performs as such President; and it is further

" Adjudged and declared, that the designation of a Deputy Mayor by the Mayor, or in a proper case by the President of the Council when acting as Mayor, in nowise operates to limit or restrict the powers and duties devolving upon the Vice Chairman pursuant to Section 29 of the Charter; * * *.' "

By section 29 of the Charter, which creates the office of .vice-chairman of the city council, it is provided that he " shall possess the powers and perform the duties of the president of the council when the president * * * is acting as mayor * * * and he shall, during such times, retain his right to vote and shall be a member of every board of which the president of the council is a member by virtue of his office." Section 63 of the Charter,

which applies to the meetings of the board of estimate, provides that at meetings of this board " the mayor, or in his absence the president of the council, shall preside * * *." The plaintiff, accordingly, has absolute rights when the mayor is absent from the city unless some other section of the Charter clearly limits the aforecited provisions.

Section 10 of the Charter prescribes when the president of the council shall act as mayor, among other circumstances as follows:

" (2) while the mayor shall be prevented from attending to the duties of his office by reason of sickness, absence from the city or suspension from office.

" b. The president of the council, while acting as mayor in consequence of the mayor's sickness or absence from the city, shall not, until such sickness or absence shall have continued thirty days, exercise any power of appointment to or removal from office, or any power lawfully delegated by the mayor to the deputy mayor, whether before or after the commencement of such sickness or absence; and shall not, until such sickness or absence shall have continued nine days, sign, approve or disapprove any local law or resolution unless the period during which the mayor may act thereon would expire during such nine-day period, in which case the president of the council shall have the power to disapprove the same within forty-eight hours before the time to act thereon expires."

It is clear from this section that it is mandatory upon the president of the council to become acting mayor during the absence from the city of the mayor unless some statute clearly limits that direction to so act. The only Charter section which concerns us is the provision that his tenure shall be subject to " any power lawfully delegated by the mayor to the deputy mayor."

The deputy mayor is provided for by section 9 of the City Charter. This section reads as follows: " The mayor may appoint a deputy mayor who shall possess such of the powers of the mayor and for such times and subject to such conditions as shall be expressed in written authority to be signed by the mayor, excepting the power of appointment or removal, the power to approve or disapprove local laws or resolutions, the power to act as a magistrate and the power to hold any hearing which the mayor is required by law to hold personally. The deputy mayor, if thereunto authorized by such written authority, may act in the place of the mayor as a member of the board of estimate or of any other board, body or committee but not as chairman thereof * * *."

The issue before us is a very important one of charter construction and may perhaps best be stated in the form of a question: May the mayor lawfully delegate the deputy mayor to sit for him in

board of estimate meetings when he is ill, absent from the city or suspended under charges?

It seems clear that the president of the council by direct mandate must assume the duties of the mayor when the mayor is absent from the city. He is the duly elected officer and the one designated to act as mayor during the mayor's absence from the city. If it be admitted also that during the absence of the mayor the deputy mayor may sit in the board of estimate and exercise all the mayor's powers except those of chairman, the Charter is clearly self-contradictory as to just who exercises the functions of mayor during the absence of the mayor from the city. It is obvious that during the absence of the mayor, the president of the council might under some circumstances be forced to disapprove at once some local law or resolution to avoid the contingency that the period during which the mayor might act would expire forthwith. This is clear from the last sentence of subdivision b of section 10. Similarly, if one considers the unusual contingency that the mayor may be suspended from his duties for one reason or another, it is very unlikely that the electorate ever intended that he might continue to act as mayor through his self-appointed deputy while he was under charges. These are but some of the inconsistencies or anomalies which result from the contentions of the defendants.

The exercise of the voting powers of the mayor in the board of estimate is one of the most important functions that the mayor of New York has, and to give these sections the meaning claimed for them by the defendants is to make a most dangerous and radical departure from prior practice, the result of long experience in city affairs. To reach such a result, we must conclude that it was the considered opinion of the voters of the city of New York when adopting this Charter that during the absence of the mayor for periods of less than thirty days, at least, the mayor's votes should be cast at the mayor's discretion by any one the mayor might appoint so to do, rather than by an elected official of the city. Such a result, of course, is possible and is specifically provided for in the case of absent borough presidents. The mayor of New York has three votes and the casting of these votes is a very much more serious matter to the people of the city of New York than the occasional casting of a vote by a deputy of a borough president. The danger in such a practice must be apparent to any one, especially to those experienced in municipal government.

Before we assent to this extraordinary and unprecedented result, it is desirable to determine just what idea was in the minds of the framers of the Charter when the provision was drafted and, therefore, in the minds of the voters when they adopted the Charter.

The best guide to that is the report of the New York City Charter revision commission. It was stated on page 8* of this report: " To relieve the Mayor from the excessive burden of routine duties, provision is made for the appointment of a Deputy Mayor, to whom he may delegate any except his most important functions." It seems clear enough in view of this provision that the electors adopted this Charter on the representation that only unimportant routine duties were to be performed by the deputy mayor and that the electors were entitled to assume from the very wording of the provisions regarding the acting mayor that in cases of sickness, absence from the city or suspension of the mayor, such an important function as voting in the board of estimate could not lawfully be delegated. To decide now that it is the elected official who is restricted and not the appointed deputy mayor is equivalent to perpetrating a gross imposition on the electorate of the city of New York. This should not be tolerated.

The mayor is in the position to make almost any one his deputy, even though such a person could never be elected to any office. We have seen some very striking examples of that in other much less important offices. The power to appoint a deputy mayor is serious enough even though the deputy can function only in the board of estimate while the mayor is still in the city and in good health and, therefore, subject to call on the immediate demands of the public. It is much more serious if the mayor may turn over possibly the deciding vote on important matters to anybody chosen at will for long periods or while absent from the city by reason of sickness, or while under suspension.

Irrespective of the occupant of the office of mayor, the public should be protected if such a construction of the statute may properly be made which will inure to the benefit of the public. We, therefore, construe this provision as allowing the deputy mayor to sit for the mayor in the board of estimate only for such periods as the mayor is in the city, in good health and not suspended from office. Under these ordinary conditions the mayor may very well be called up to attend to other important matters or to some unexpected crisis in civil affairs which might make it temporarily inconvenient for him to be present at the meetings of the board of estimate. This is a reasonable interpretation of the various provisions of the Charter read together and it is entirely in line with the statement of the Charter commission that the delegated duties should be merely those of a routine character.

* Tanzer's New York City Charter, p. 480.— [Rep.

The judgment below is in all respects correct and should be affirmed.

Judgment and order reversed, plaintiff's motion for judgment on the pleadings denied, and defendants' cross-motion for judgment on the pleadings dismissing the complaint granted.