Bergax, J.
The action is to declare statutory powers of the Board of Estimate of the City of New York in the budget-making process constitutionally invalid because of the marked population inequalities of the units which elect some of the board’s members. The court at Special Term granted judgment for the defendants and expressly declared the challenged statutory powers valid. A direct appeal is here on constitutional grounds.
The plaintiff’s contention is that the selection of the five Borough Presidents who have equal voting powers in the Board of Estimate but who are elected by boroughs which have numerically widely disparate populations, violates the right of the citizen to have substantial equality with others in the part his vote plays in selecting officers of local government—the concept of one man-one vote.
This construction of the equal protection clause of the United States Constitution (14th Arndt., § 1) .to interdict selection of State and local officials sharing equal powers by geographical *408 units of unequal population has, in its development by the Supreme Court, been addressed mainly to State and local legislative bodies (Reynolds v. Sims, 377 U. S. 533 [1964], and the group of related decisions of that year, e.g., WMCA, Inc. v. Lomenzo, 377 U. S. 633; Wesberry v. Sanders, 376 U. S. 1).
This also has been its direction in New York (Town of Green-burgh v. Board of Supervisors, of Westchester County, 25 N Y 2d 817; Abate v. Mundt, 25 N Y 2d 309 ; Iannucci v. Board of Supervisors, 20 N Y 2d 244; Saratogian, Inc. v. Board of Supervisors, 20 N Y 2d 244; Seaman v. Fedourich, 16 N Y 2d 94). Reference was made on the argument to Kramer v. Union Free School Dist. (395 U. S. 621 [1969]) but this involves the qualifications of voters to participate in school elections and not the equality of population bases for multimember local agencies.
The further development of the rule by the Supreme Court in Avery v. Midland County (390 U. S. 474 [1968]) has shown that the traditional legislative function of the local unit is not the single test to be applied. More broadly it is to be decided whether a local unit composed of multiple members has ‘ ‘ general governmental powers over the entire geographic area ” (390 U. S., at p. 485). This is something different from a test measured by legislative powers alone. In pure theory, at least, the typical legislative body in the United States does not normally exercise “general governmental powers ”. Indeed the concept of separation of powers negates the exercise by any one branch of “general governmental powers ”, Normally only governments with parliamentary executives come close to this theoretical merger.
The main 'thrust of plaintiff’s argument is that budget-making is primarily a legislative function (People v. Tremaine, 252 N. Y. 27) and that by its role in preparing the city budget the Board of Estimate performs a truly legislative function; thus its members must be selected with the equality required for other local legislative bodies. The result actually sought by plaintiff is a judicial excision of the board’s statutory budget powers.
It is conceded by plaintiff that the Board of Estimate performs ‘ ‘ many administrative functions ’ ’ but those powers ‘‘ are not questioned ’ ’. And, so plaintiff also suggests, the past powers of the board and their historical development are irrelevant to the question raised.
*409 Although plaintiff cites and seems to rely on Midland County (supra) in support of his action, he does not expressly argue that the Board of Estimate exercises "general governmental powers ’ ’ within the literal definitions of that case.
He does seem to imply this, however, in suggesting that budget-making—the power of the purse — “ is the essence of sovereign power ”. The respondents argue that the Board of Estimate is not a legislative body and especially that it does not exercise ‘ ‘ general governmental powers ’ ’ within the Midland County rule.
The Board of Estimate’s constituency and its budgetary powers are precisely stated in the New York City Charter and are not disputed. Its membership is made up of the Mayor,, the Comptroller, the President of the Council, each of whom is entitled to cast four votes; and the five Borough Presidents, each of whom is entitled to cast two votes.
There are thus 22 votes in the board and the Presidents of the boroughs all together may cast less than half of them. The units in which the Borough Presidents are chosen are of greatly varied populations. The Borough of Kings, for example, has a population of 2,627,319 and the Borough of Richmond .221,991.
The budget-making powers of the Board of Estimate are at once closely conditioned and highly contingent on the action of other city agencies, executive and legislative. The board is itself unable alone to make or revoke a budget with finality or to add or delete an item in a budget beyond the reach of further change by others.
The Charter authorizes the Mayor to prepare and submit to the Board of Estimate, and the Council which is a body “ vested with the legislative power of the city” (Charter, § 21) his expense budget. This embraces the noncapital expenditures of the city for the fiscal year.
Either the Board of Estimate or the Council may alter the original budget by adding or eliminating items ('§ 120). The Mayor may disapprove any such changes by his veto (§ 121, subd. b). If he disapproves the change his action disposes of that item and is reflected in the final budget unless his disapproval (veto) is overridden.
Such a veto can be overridden by a vote of two thirds of the Council and of two thirds of the Board of Estimate acting *410 together in identical terms. In computing the two thirds of the board, the Mayor’s four votes are not considered (§ 121, subd. c). This means that two thirds of 18 votes, or 12, are needed to override the Mayor’s veto which the Borough Presidents alone,with 10 votes, could not accomplish. In some respects this process is seen to be similar to the way bicameral legislatures consider executive budgets, but it prescribes a more limited impact on executive budget decisions.
For the purpose of considering the problem raised in this present case, the influence on the powers of board members elected from units of unequal size, it is to be seen that even if all those members acted together, they could never alone accomplish decisive budget choices. There are similar mechanisms affecting the city’s capital budget.
That this was not, in the usual sense, regarded as a legislative function in the judgment of the draftsmen of the Charter is to be seen when it is recalled that the “ legislative power ” is exercised by the Council which is expressly established as "the local legislative body of the city ” (Charter, § 21).
Thus the Board of Estimate must be regarded as an indigenous local governmental institution which neither fits fully into the role of a legislative body, nor has “ general governmental powers over the entire geographic area ’ ’ within Midland County.
Indeed the plaintiff’s argument is that .the board exercises legislative powers only in the part it plays in budget-making and not on the exercise of legislative powers in any broader sense. And since the plaintiff concedes that the city-wide election of those members of the board who have a voting majority therein is not constitutionally objectionable, it seems consistent both with the decisions of the Supreme Court and this court to hold the board is validly constituted.
In the development of .the Midland County opinion the court noted that the Commissioners Court of Midland County, Texas, had, among other things, “ authority to make a substantial number of decisions which affect all citizens, whether they reside inside or outside ,the city limits of Midland ’ ’ (390 U. S. 474, 484).
This description could, of course, fit innumerable State and local agencies throughout the country. When the opinion is seen in full text this is obviously not the test by which the one man-one vote requirement is to be applied to multimember agencies.
*411 That test, which State governments must meet, is laid down clearly in the summation of decision which follows the words “ We hold today only ” (p. 484). It is this: that there must he ‘ ‘ no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body ’ ’ (p. 485).
The view of legal commentators within Texas itself, as the Supreme Court observed, is that the Commissioners Court “ ‘ is the general governing body of the county ’ ” (p. 476). But the Board of Estimate does not exercise power in this scope, and as it has been noted, plaintiff does not argue explicitly that it exercises that kind of power.
The Board of Estimate in its present statutory frame is the result of a purpose to apportion and distribute budget-making among city executive and legislative officers. In structure and composition it seems quite unique.
The variations of local government in the United States are as infinite as the local needs to which they are addressed; and the Supreme Court seems not disposed to read the Constitution to impose rigidity in concept or to impede experimentation.
This was made manifest by the court in two 1967 cases: Sailors v. Board of Educ. (387 U. S. 105) which involved a special Michigan method of choosing school boards, and in Dusch v. Davis (387 U. S. 112) which involved a method of selection of a city council in Virginia at large but which limited the residence of some of the members to boroughs of different population.
In referring to these two cases, the court in Midland County noted that its decisions reading the Constitution are “ not roadblocks in the path of innovation, experiment and development among units of local government ” (390 U. S., at p. 485).
It has become apparent that new forms of intra-State and inter-State regional governments may become inescapable future needs, and that broad testing will become necessary to discover what institutions will work best in regional governments. In much of this restructuring representation in the eighteenth century parliamentary geographic population sense may come to have little relationship to fashioning effective mechanisms for public responsibility and public accountability.
*412 Popular geographic equality as a base for multiple-member institutions is only one part of a total problem of elusive complexity. The present Board of Estimate in the statutory form of its budgetary powers — and those are the only ones here challenged—■ suggests one form of regional institution in which groups of local executives play some part in budget preparation which is neither legislative .nor executive within classical definitions.
It would follow, then, that the budget-maldng role of the Board of Estimate is not of. such a legislative character as to prohibit the selection of executives from boroughs of unequal size, when such members could never alone control budget decisions.
The judgment should be affirmed, without costs.
Chief Judge Fuld and Judges Burke, Scileppi, Breitel, Jasen and Gibson concur.
Judgment affirmed.