Beverly MORRIS; Joy Clarke Holmes; Joanne Oplustil, Plaintiffs,

v.

The BOARD OF ESTIMATE, the City of New York, Edward I. Koch, individually and as Mayor of New York, Carol Bellamy, individually and as City Council President, Harrison J. Goldin, individually and as Comptroller for the City of New York, Howard Golden, Andrew Stein, Stanley Simon, Donald Manes, Anthony Gaeta, each individually and as Borough Presidents of the boroughs of the City of New York, Defendants,

and

Frank V. Ponterio, Intervenor-Defendant.

No. 81 CV 3920 (ERN).

United States District Court, E.D. New York.

Dec. 1, 1982.

Richard Emery, Arthur Eisenberg, New York Civil Liberties Union, New York City, for plaintiffs.

Frederick A.O. Schwarz, Jr., Corp. Counsel by Judith A. Levitt, Susan R. Rosenberg, Asst. Corporation Counsels, New York City, for defendants.

Frank V. Ponterio, Staten Island, N.Y., intervenor-defendant pro se.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This action raises again the question of the application of the "one person, one vote" principle of the Fourteenth Amendment to an agency of local government.[1] Plaintiffs are three registered voters of the Borough of Brooklyn who seek declaratory and injunctive relief to remedy claimed disproportionate representation of their borough on the Board of Estimate of the City of New York. This Court's jurisdiction over the action is not in controversy; indeed, the defendants join plaintiffs in seeking a disposition by summary judgment on the basis of an agreed statement of facts not in dispute, and both sides have served motions accordingly.

The defendants in the action are the City of New York, the Board of Estimate (hereinafter "Board") and its eight constituent members, namely, the Mayor, the Comptroller, the President of the City Council and the five Borough Presidents.[2] These officials are not elected to the Board. Rather, they function as members of the Board by virtue of their prior election to the City governmental offices they hold. Essentially, the controversy between the parties focuses solely upon the allocation of one vote to each of the five borough presidents for purposes of deciding matters over which the Board has jurisdiction. Plaintiffs contend in general that such an equal distribution of voting power is an unconstitutional dilution of the voting rights of Brooklyn residents who substantially outnumber the popula-

tions of the four other boroughs, especially the considerably less populous Borough of Richmond (Staten Island). Defendants, however, raise a more fundamental question: whether the Board, as a unique instrumentality of local government, is subject to the "one person, one vote" rule. For the reasons hereinafter discussed, we hold that it is not and thus the "one person, one vote" rule has no relevance to the Board's functions.

The following relevant facts are not in dispute. The Board is an agency[3] of New York City municipal government authorized by Chapter 3 of the New York City Charter. The current City Charter, except as amended in 1975, became effective January 1, 1963 following approval by the City's voters. The Board, however, has had a long and varied history dating back to 1864, when it was originally created for the purpose of estimating the expense of conducting a metropolitan police district for the then separate cities of New York and Brooklyn. Its original members were the Commissioners of the Metropolitan Police (appointed by the Governor) and the Comptrollers of New York and Brooklyn (chosen by the respective Common Councils of those cities).[4]

As already indicated, the Board of Estimate is now comprised of three city-wide officials, *i.e.*, the mayor, the comptroller, the city council president and the five borough presidents. Ch. § 61.[5] The city-wide officials are, of course, elected to their respective offices by majority vote of the City's entire voting electorate. Each borough president is elected only by the voters residing in his borough and is allotted one

---

1. See *Andrews v. Koch*, 528 F.Supp. 246 (E.D. N.Y.1981), *aff'd on opinion below*, 688 F.2d 815 (2d Cir.), *aff'd without opinion*, —— U.S. ——, 103 S.Ct. 32, 74 L.Ed.2d 46 (1982).

2. Frank V. Ponterio, a registered voter of Staten Island, was permitted to intervene as a defendant and was heard on papers and oral argument in opposition to plaintiffs' motion.

3. See Charter § 1150, par. 2, defining "agency" as including a "board" when, as here, its expenses are paid from the City treasury.

4. See Affidavit of Werner Kramarsky in Support of Plaintiff's Motion, to which is annexed as Exhibit A a report prepared by him in 1973 for the Charter Revision Commission entitled "The Structure, Powers and Functions of New York City's Board of Estimate," hereinafter referred to as "Kramarsky Report at ——." The instant reference is to page 1 of that report.

5. References "Ch. § ——" are to sections of the New York City Charter as amended.

vote on the Board. The city-wide officials on the Board have two votes each for a total of six, which constitutes a majority except when the mayor's two votes are eliminated in the budget formulation and adoption process. Ch. § 62.

To carry out its responsibilities, the Board is required to meet at least once every other week except during July and August. Ch. § 63. The mayor, or in his absence the president of the city council, presides at all meetings. Id.[6] Unless otherwise provided in the Charter or by law, the Board must act by resolution adopted by a majority of the eleven votes authorized to be cast by all its members, except that a three-fourths vote is required to adopt a resolution or amendment thereof which is originally presented at a Board meeting. Moreover, such a resolution or amendment may not be finally passed except at a meeting open to the public. Ch. § 62 b, c. By unanimous vote the Board may delegate to any member or committee the power to act or hold hearings on any matter within its jurisdiction, excluding, however, matters included in the formulation and adoption of the expense and capital budgets, city planning and the granting of franchises as set forth in Chapters 6, 8, 9 and 14 of the Charter. Ch. § 65.

The responsibilities, powers and duties of the Board are set forth in the Charter, the New York City Administrative Code and sundry provisions of State law. Section 67 of the Charter provides that:

"The board shall exercise the powers and perform the duties imposed upon it by this charter, and shall:

"1. Grant leases of city property and concessions for the use of city property and enter into leases of property to the city for city use.

"2. Make recommendations to the mayor or the council in regard to matters of city policy whenever requested or on its own initiative.

"3. Hold public hearings on any such matter of city policy or other matters within the scope of its responsibilities whenever requested by the mayor or required to do so by this charter or other provision of law or whenever in its judgment the public interest will be benefited thereby.

"4. Have final authority respecting the use, development and improvement of city land.

"5. Have authority to approve standards, scopes and final designs of capital projects.

"6. Have power to supersede a community board or withdraw from a community board delegated powers of such community board for violation of law, malfeasance or misfeasance by three-quarters vote after notice to members of the community board and a public hearing.

"7. Hold a hearing on tax abatement applications relating to the development of city land where the granting of such applications involves the exercise of administrative discretion by any city agency."

In addition, Charter chapters 6 and 9 provide a concurrent role for the Board with that of the city council and the mayor in the formulation and adoption of the City's annual expense and capital projects budgets. It is these provisions which are the core of plaintiffs' claims that the Board is "one house of a bicameral legislature" in which Board members representing only 41.7% of the City's population may "control a majority of votes on every budget measure." Complaint, pars. 8B, 16. Those claims, however, cannot withstand a fair analysis of a City budgetary procedure which is clearly designed to insure that all the City's elected officials, officers of City

---

**6.** As Commissioner Kramarsky states in his affidavit, an absent mayor may be represented at Board meetings by delegating his authority to a deputy mayor appointed by him or to a member of his executive office. See *Sharkey v. LaGuardia,* 259 App.Div. 557, 19 N.Y.S.2d 965,

*aff'd,* 283 N.Y. 725, 28 N.E. 726 (1940), and *Battista v. Board of Estimate,* 51 Misc.2d 962, 274 N.Y.S.2d 729 (Sup.Ct.1966). Indeed, each member of the Board may appoint a delegate to act in his stead during his absence from Board meetings. Ch. §§ 7, 23, 82, 94.

agencies and representatives of community and borough boards representing all sectors of the City have the opportunity to be heard before an expense or capital budget is finally adopted. Ch. §§ 119, 221.

It is the mayor, as the City's chief executive officer, Ch. § 3, acting through his appointed director of management and budget, Ch. § 111, who initially shapes and proposes the expense budget based upon his views of the City's needs and priorities in light of its revenue resources. Ch. §§ 112–117. The Board acting jointly with the city council may not reject the proposed budget in toto; but "may increase, decrease, add or omit any unit of appropriation ... or add, omit or change any terms or conditions of it." Ch. § 120. And if the Board and city council cannot agree by June 5th of any year, "the budget and tax rate adopted as modified for the current fiscal year shall be ... extended for the new fiscal year until such time as a new budget is adopted." Ch. § 120 c.

Moreover, although the mayor may not vote as a member of the Board when it and the city council are considering his proposed budget, he has the power to veto any changes they make. Ch. § 121. In that event, either the Board by two-thirds vote of all members other than the mayor, or the city council by two-thirds vote of all its members must act to override his disapproval of any change. If the Board does so, it must be supported by majority vote of all city council members; if the city council acts first, the Board must concur by majority vote without the mayor's two votes. Ch. § 121 b. Also, during any fiscal year the mayor may transfer one unit of budget appropriation to another without notice to the Board or the city council. Only when a transfer is from one agency to another, or results in a unit of appropriation being increased or decreased by more than 5%, must notice be given to the Board and the city council.[7] Either body may disapprove the proposed action within 30 days. Ch. § 124

b. The New York Court of Appeals has held that in such event the mayor may vote as a member of the Board. *Golden v. Koch,* 49 N.Y.2d 690, 427 N.Y.S.2d 780, 404 N.E.2d 1321 (1980).

The formulation and adoption of the City's capital projects budget follows a parallel course, except that the city planning commission, also appointed by the mayor, Ch. §§ 191–192, advises and assists him, the Board and the city council in planning capital project undertakings. Also the comptroller provides information as to the maximum amount of debt and reserves the City may soundly incur for capital projects and debt financing during the ensuing four fiscal years. Ch. § 212. Again both the Board and the city council must agree on any changes to be made in the mayor's proposed executive capital budget; and, if the mayor vetoes such changes, must unite to override any disapproval in the same manner as provided for the expense budget. Ch. § 223 c.

It can readily be seen from the foregoing Charter provisions that the borough presidents on the Board cannot control the City's budgetary process, as plaintiffs contend. First, the Board alone cannot adopt a budget; the city council's separate concurrent vote is required. Ch. § 120 b. Second, the Board cannot initiate an override of a mayor's veto except by a two-thirds vote excluding the mayor's vote. Ch. § 121b. That would require six votes out of nine, which means that the support of the comptroller or the city council president, or both, is essential. Only if the city council initiated an override by two-thirds vote of its members is it possible for the Board to concur by a majority of five votes. And if the two bodies fail to agree, the expense budget as modified by the mayor is adopted. *Id.* As already indicated, parallel provisions apply with similar effect in the case of the capital projects budget. Ch. §§ 222, 223.

---

**7.** A contemporaneous example of the mayor's power to make changes in the City budget after its adoption is reported in The New York Times, November 24, 1982, at p. B3, captioned "Estimate Board Expects a Battle On City Budget."

The critical flaw in plaintiffs' argument is their misconception of the ruling and principles enunciated in *Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), on which they heavily rely. The question before the Court in that case was "whether the Fourteenth Amendment likewise forbids the *election* of local government officials from districts of disparate population." *Id.* at 478, 88 S.Ct. at 1117, emphasis supplied. Answering that question in the affirmative, the Court stated the underlying principle that "the Constitution permits no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body." *Id.* at 485, 88 S.Ct. at 1120. The Commissioners Court of Midland County in *Avery* was in fact the County's elected governing body whose members represented districts of widely disparate population, except for the county judge, who was elected at large. The Board, however, is not an elected body: it consists of a group of public officials who are already constitutionally elected to their respective offices as required by law. Ch. § 4 (election of mayor); Ch. § 23 (election of president of city council); Ch. § 81 (election of borough presidents); Ch. § 91 (election of comptroller). No provision is made in the Charter for the election of a board of estimate. Membership and participation in the assigned activities of the Board is simply a part of the prescribed duties of the respective offices to which the designated officials were already elected. Ch. §§ 61– 68. The members of the Board are, in effect, appointed by local law.

Prior to its decision in *Avery, supra,* the Supreme Court had already found no reason why local government officials of a "non-legislative character" could not be chosen by "some other appointive means rather than by election." *Sailors v. Board of Education,* 387 U.S. 105, 108, 87 S.Ct. 1549, 1552, 18 L.Ed.2d 650 (1967). In *Sailors,* the Court rejected a constitutional challenge to the biennial selection of county school board members by delegates chosen by local school boards whose members had been elected by the people. Noting again that "[w]e see nothing in the Constitution to prevent experimentation," the Court held that "[s]ince the choice of members of the county school board did not involve an election and since none was required for these non-legislative offices, the principle of 'one man, one vote' has no relevancy." *Id.* at 111, 87 S.Ct. at 1553.

Plaintiffs seek to clothe the Board with a legislative character by contending that it "maintains legislative functions which are implemented on a day-to-day basis," while conceding that it is not "formally denominated a city legislature." Pl.Mem. at 10. The Charter makes it clear, however, that it is the city council which is "vested with the legislative power of the city, and shall be the local legislative body of the city." Ch. § 21. It is the city council elected by the voters, not the Board, which is charged with the responsibility of enacting the local laws that govern the City. Ch. § 27. Noteworthy also is the provision that the city council president—a member of the Board—has no vote in council deliberations except to break a tie. Ch. § 23 d. Moreover, as previously pointed out, to the extent that the Board has a role with the city council in the budget-making process which may be regarded as legislative in nature, the Board's powers "are at once closely conditioned and highly contingent on the action of other city agencies, executive and legislative. The Board is itself unable alone to make or revoke a budget with finality or to add or delete an item in a budget beyond the reach of further change by others." *Bergerman v. Lindsay,* 25 N.Y.2d 405, 409, 306 N.Y.S.2d 898, 255 N.E.2d 142 (1969). The subsequent elimination in 1975 of the mayor's votes on the Board in the budget formulation and adoption process clearly does not undermine the *Bergerman* Court's findings or permit representatives of a minority of the City's population to adopt a budget, as plaintiffs contend. Pl.Mem. 10, 35.

To conclude, plaintiffs' attempt to draw an analogy between the Board and the local governing bodies before the Court in *Avery, supra,* in *Hadley v. Junior College District,*

397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), and in *Abate v. Mundt,* 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971), ignores the critical element in each case, namely, the malapportionment of an *elected* governing body. That is not the case here, since the Board *per se* is not an elected body.

As the New York Court of Appeals has pointed out, "the chartered plan of government for the City of New York has but two branches—executive and legislative—the functions of which, as defined by the legislature, are not always independent. This comes about . . . from the fact that a city is not sovereign, as are the federal government and the States," but is simply an agency of the State. *LaGuardia v. Smith,* 288 N.Y. 1, 7, 41 N.E.2d 153 (1942). The mayor, as the chief executive officer of the City, in addition to his power to appoint and remove all city officials not elected by the people, exercises "all the powers vested in the city, except as otherwise provided by law." Ch. §§ 3, 6, 8. The city council, as already noted, is "vested with the legislative power of the city . . . ." Ch. § 21. The role and power of a borough president, on the other hand, is considerably more limited. Aside from appointing or removing a deputy, an executive assistant and subordinate employees, a borough president is limited to maintaining a topographical bureau, chairing a borough board, holding public hearings on matters of public interest, and making recommendations to the mayor and other city officials on capital projects and in the interest of the people of his borough. Ch. §§ 82, 85.

Where then does the Board fit into City government? It is in large measure, to quote the Kramarsky Report, *supra,*

"a forum in which the most powerful elected officials representing different parts of the city can meet and represent the interests of their particular groups, as well as the City as a whole . . . ." *Id.* at p. 5.

But the Board is more than a forum, for as the same report shows, the Board performs a wide variety of executive and administrative functions in respect of the use of property of, or for the City; the authorization and/or approval of public improvements; the disposal of City property; city planning and zoning; contracts and franchises; budgetary and financial matters; and a miscellany of minor matters. Kramarsky Report, Appendix A, at 122 *et seq.* None of these, however, is legislative in nature except for the Board's limited role in the annual budget process, which cannot be decisive without the concurrent support of the city council. More important, if there were no Board, these functions would very likely have to be performed by the same elected officials who constitute the Board, and who indeed now make its decisions.

Since in our view the Board does not fall within the purview of the "one person, one vote" rule, plaintiffs' motion for summary judgment must be denied and defendants' motion granted.

SO ORDERED.