Beverly **MORRIS**, Joy Clarke Holmes, Joanne Oplustil, Plaintiffs-Appellants,

v.

The **BOARD OF ESTIMATE**, The City of New York, Edward I. Koch, individually and as Mayor of the City of New York, Carol Bellamy, individually and as City Council President, Harrison J. Goldin, individually and as Comptroller for the City of New York, Howard Golden, Andrew Stein, Stanley Simon, Donald Manes, Anthony Gaeta, each individually and as Borough Presidents of the boroughs of the City of New York, Defendants-Appellees,

and

Frank V. Ponterio, Intervenor-Defendant-Appellee.

No. 1101, Docket 83-7007.

United States Court of Appeals, Second Circuit.

Argued April 4, 1983.

Decided May 16, 1983.

Richard Emery, New York City (Arthur Eisenberg, New York Civil Liberties Union, New York City, on the brief), for plaintiffs-appellants.

Judith A. Levitt, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel, Leonard Koerner, Susan D. Rosenberg, New York City, on the brief), for defendants-appellees.

Frank V. Ponterio, Staten Island, N.Y., for intervenor-defendant-appellee, pro se.

Terence H. Benbow, New York City (Alan Rothstein, New York City, on the brief), for amicus curiae Citizens Union of the City of New York.

Before KAUFMAN and NEWMAN, Circuit Judges, and LASKER, District Judge.*

LASKER, District Judge.

This appeal presents the question whether the equal protection principle of one person, one vote is applicable to the election of members of the New York City Board of Estimate.

The Board of Estimate ("the Board") is one of the governing bodies of New York City. It exercises a wide range of powers, including the power to negotiate and enter all contracts on behalf of the city; to approve or modify all zoning decisions for the city; to set tax abatements; and to determine the use and development of all property owned by the city. In addition, in conjunction with the City Council, the Board

* Hon. Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation.

recommends and approves the city's expense and capital budgets.[1]

The Board has eight members. Three of the members, the Mayor, the Comptroller and the President of the City Council, are elected by the votes of the entire city electorate. The other members are the Borough Presidents of New York City's five boroughs: the Bronx, Brooklyn, Manhattan, Queens and Richmond (Staten Island). The Borough Presidents are elected only by the voters of their respective boroughs.

The boroughs of New York vary greatly in population. According to the 1980 census, Brooklyn, the largest, had a population of approximately 2.2 million, while the population of Staten Island, the smallest, was slightly over 350,000. Appellants claim that the system by which voters of geographical units of substantially different populations send the same number of representatives to the Board violates the Equal Protection Clause of the Fourteenth Amendment. Appellants, residents and voters of Brooklyn, contend that as a result of the present voting scheme, voters in Staten Island have six times the voting strength of Brooklyn voters.

In the district court, 551 F.Supp. 652, the principal parties cross-moved for summary judgment on agreed facts. Summary judgment was opposed by Frank Ponterio, a resident and voter of Staten Island, who had been permitted to intervene. The court granted appellees' motion for summary judgment, concluding that the Board is neither an elective nor a legislative body, and that, accordingly, under *Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), and *Sailors v. Board of Education,* 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), the constitutional principle of one person, one vote was inapplicable.

The district court determined that the Board is not an elective body because no independent election is held to select the Board's members; rather, the Board "con-sists of a group of public officials who are already constitutionally elected to their respective offices as required by law." In addition, the district court, in reliance on *Sailors v. Board of Education, supra,* determined that the Board's primarily non-legislative character removed it from the reach of the Equal Protection Clause.

Appellants challenge the district court's conclusion that the Board is not an elected body, arguing that because the members of the Board become Board members as a matter of law upon election, they are in fact and law "elected" to their respective positions. They further contend that the proper question is not whether the Board executes legislative tasks, but whether it exercises *general governmental functions.* Finally, appellants argue that the voting disparities created by the present electoral scheme are far greater than permissible under the Equal Protection Clause and such cases as *Abate v. Mundt,* 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971) and *Mahan v. Howell,* 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320 (1973).

Appellees contend that the Board members sit on the Board *"ex officio"* and accordingly are not elected to the Board itself. They argue further that this Court should defer to the decision of the New York Court of Appeals in *Bergerman v. Lindsay,* 25 N.Y.2d 405, 306 N.Y.S.2d 898, 255 N.E.2d 142 (1969), *appeal dismissed and cert. denied,* 398 U.S. 955, 90 S.Ct. 2173, 26 L.Ed.2d 540 (1970), which upheld the constitutionality of the Board's electoral scheme as it was at the time. Finally, appellees urge that the unique nature of the Board presents the type of "special circumstances" that the Supreme Court has indicated may justify "departures from strict equality" of the one person, one vote rule under *Abate v. Mundt,* 403 U.S. 182, 91 S.Ct. 1904, 29 L.Ed.2d 399 (1971).

Intervenor-Appellee Ponterio defends the district court's grant of summary judgment

---

1. The powers of the Board are set forth in the New York City Charter, *see especially* §§ 67, 120, 121, 200, 202, 222, 223, 224, 229, 230, 343, 362, 363, 372, 384; the New York City Administrative Code; and sundry provisions of State law, *see e.g.,* N.Y.Gen.Mun.Law § 126 (McKinney 1977).

and further contends that if the one person, one vote rule applies to the Board, substantial questions of fact are presented as to whether the present scheme in fact results in disproportionate voting power as between voters of different boroughs, and, if so, to what extent.

I.

■ In *Hadley v. Junior College District,* 397 U.S. 50, 56, 90 S.Ct. 791, 795, 25 L.Ed.2d 45 (1970), the Supreme Court held "that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election ..." Accordingly, our primary task is to determine whether the Board of Estimate is selected "by popular election" and whether it performs "governmental functions."

In finding the Board to be an appointed body, the district court relied primarily on *Sailors v. Board of Education,* 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), in which the Supreme Court held the one person, one vote standard inapplicable to a county school board which was selected by a process described as "basically appointive rather than elective." *Id.* at 109, 87 S.Ct. at 1552. In *Sailors,* voters in local districts elected local school boards. Each local board then sent a delegate to a biennial meeting at which the county board was elected. As the Court explained: "there is not even a formal method by which a delegate [from a local school board] can determine the preferences of the people in his district. It is evident, therefore, that the membership of the county board is not determined, directly or indirectly, through an election in which the residents of the county participate." *Id.* at 110 n. 6, 87 S.Ct. at 1553 n. 6.

Unlike the county school board members in *Sailors,* the members of the Board of Estimate are directly elected by the voters. Upon election to their respective positions, they automatically become Board members

as a matter of law. Section 61 of the City Charter specifies:

> "The mayor, the comptroller, the president of the council and the presidents of the boroughs *shall constitute* the board of estimate."

(emphasis added).

It follows that the Board of Estimate is not an appointed body; its membership is definitively determined by election and by election alone.

Moreover, the question of applicability of the Equal Protection Clause to "*ex officio*" boards was settled in this Circuit in *Bianchi v. Griffing,* 393 F.2d 457 (2d Cir.1968). In *Bianchi,* we held the one person, one vote principle applicable to a county board of supervisors selected in a manner virtually indistinguishable from the process by which the Board of Estimate is chosen. The board at issue in *Bianchi* consisted of elected town supervisors who served on the county board as "delegates" of their towns. The language used in rejecting the appellee's argument in *Bianchi* describes the situation presented here:

> "The mere fact that board members may be characterized as 'delegates' and perform functions in addition to their duties on the board, does not provide a meaningful distinction ... We are impelled to the realistic recognition that a citizen entering the voting booth chooses at one and the same time a member of the Board of Supervisors and his town supervisor."

*Id.* at 461. Similarly, a citizen entering the voting booth in New York City "chooses at one and the same time" his Borough President and his Board of Estimate member. *See also Rosenthal v. Board of Education,* 497 F.2d 726, 729 (2d Cir.1974) ("Had election as a member of a local board served *automatically* to designate that elected member also as a member of a central high school board, the 'one man, one vote' concept would have been offended") (emphasis added).

Accordingly, we conclude that the Board of Estimate is selected by popular election.

## II.

The question whether the Board of Estimate exercises "general" governmental functions which have "sufficient impact throughout the district," *Hadley, supra,* 397 U.S. at 54, 90 S.Ct. at 794, is answered by a review of the Board's duties. The Board, acting alone, must approve every lease, every franchise, and, indeed, every contract entered by the city of New York. It sets tax abatements, approves and modifies all zoning decisions, and determines the use, development and improvement of property owned by the city. In view of these powers, as well as the Board's substantial role in passing on the city's budget, it appears beyond dispute that the Board exercises extensive control over the land and resources of New York City.

Whether the Board's role is more "administrative" than "legislative" is not controlling: while the distinction was at one time considered significant by the courts, and indeed was a focal point of the New York Court of Appeals decision upholding the validity of the Board of Estimate in *Bergerman v. Lindsay, supra,*[2] it was conclusively abandoned by the Supreme Court in *Hadley:*

> "It has also been urged that we distinguish for apportionment purposes between elections for 'legislative' officials and those for 'administrative' officers. Such a suggestion would leave courts with an equally unmanageable principle since governmental activities 'cannot easily be classified in the neat categories as favored by civics texts, *Avery [v. Midland*

County, 390 U.S. 474, 482, 88 S.Ct. 1114, 1119, 20 L.Ed.2d 45 (1968) ].' "
*Id.* 397 U.S. at 55–6, 90 S.Ct. at 794–5.

Accordingly, we conclude that the Board of Estimate is selected by popular election and performs general governmental functions. The principle of one person, one vote is therefore applicable.

## III.

Because the district court found the one person, one vote rule inapplicable, no findings were made concerning the level of malapportionment, the weight of the state interests alleged to justify whatever level of deviation exists or whether the combination of at-large and local seats, in the context of the voting procedures of the Board, creates a system of representation that satisfies constitutional standards for instruments of local government. It is therefore proper to remand the case to the district court so that it can make such findings.

Upon remand, the district court must determine *the degree of malapportionment* present (after deciding on the appropriate methodology for doing so)[3] and rule on the policies and interests which the Supreme Court has held may justify deviations from the literal one person, one vote formula.

"Mathematical exactness or precision is hardly a workable constitutional requirement," *Reynolds v. Sims,* 377 U.S. 533, 577, 84 S.Ct. 1362, 1389, 12 L.Ed.2d 506 (1964), and this is "particularly true for state and local bodies, where more flexibility is constitutionally permissible due to the interest in the normal functioning of these institutions," *Baker v. Regional High School Dis-*

---

**2.** The New York Court of Appeals held that the one person, one vote rule was not applicable to the Board of Estimate because the Board exercised neither legislative nor general governmental powers. *Bergerman v. Lindsay,* 25 N.Y.2d 405, 306 N.Y.S.2d 898, 255 N.E.2d 142 (1969), *appeal dismissed and cert. denied,* 398 U.S. 955, 90 S.Ct. 2173, 26 L.Ed.2d 540 (1970). However, the *Bergerman* case was decided without the benefit of the Supreme Court's ruling in *Hadley, supra,* decided shortly thereafter, which we believe dictates a different result. Moreover, subsequent to the *Bergerman* decision, the law governing the Board's voting

rules was altered by the 1975 New York City Charter Amendments to eliminate the Mayor's votes in the budget adoption process so that today it is theoretically possible for the votes of Board members representing a minority of the population to control the outcome on budget matters.

**3.** For example, the fact that three members of the Board are elected at large from the entire city raises novel issues as to how an individual voter's opportunity to elect these members should be assessed in conjunction with his opportunity to elect his borough representative.

*trict No. 5,* 476 F.Supp. 319, 323 (D.Conn. 1979). The district court may find it desirable to amplify the record with regard to "the particular circumstances and needs of [the] local community as a whole [which] may sometimes justify departures from strict equality." *Abate v. Mundt,* 403 U.S. 182, 185, 91 S.Ct. 1904, 1906, 29 L.Ed.2d 399 (1971).

Two brief comments as to arguments of intervenor-appellee Ponterio are in order. First, Ponterio attempts to demonstrate statistically that even if the votes of Brooklynites are diluted under the present arrangement, the Board's structure and composition is such that it cannot be controlled by representatives of a minority of the population. That point, however worthwhile, is not dispositive: a plaintiff in a malapportionment case is not required to prove that the challenged body is controlled by representatives of a minority of the population. The question is not whether Staten Island "dominates" the Board of Estimate, but whether "the guarantee of equal voting strength for each voter [which] applies in all elections of governmental officials," *Hadley, supra,* 397 U.S. at 58, 90 S.Ct. at 796, is violated by the present electoral scheme.

Second, Ponterio purports to prove that under a proportional voting scheme adjusted to equalize the disparities complained of by appellants, Staten Island's voters would be "effectively disenfranchised" because Staten Island's vote would rarely be decisive. As an initial matter, we question whether such a proposition is capable of being proven in a reliable manner: whether a minority representative is "effectively disenfranchised" or whether it becomes the "kingmaker" that regularly breaks ties between the major coalitions depends on which coalitions most often occur in practice, a matter which appears unpredictable except perhaps for the short run. However, questions of proof are for the district court. More importantly, the fact that a minority may regularly be overshadowed by its more populous neighbors under a proportional voting scheme is one characteristic of a representative democracy. Whether the present allocation of seats on the Board is a constitutionally permissible way of blending majority control with minority representation and other legitimate needs of local government is one issue to be examined on remand.

Nothing said above is intended to indicate a view as to the proper or preferable means of constituting the Board or whether it is presently properly constituted. In connection with the present structure of the Board it is important to recognize that the Supreme Court has repeatedly endorsed innovative approaches to local government, devised by local officials to meet local needs. "[T]he Constitution and this Court are not roadblocks in the path of innovation, experiment, and development among units of local government," *Avery v. Midland County,* 390 U.S. 474, 485, 88 S.Ct. 1114, 1120, 20 L.Ed.2d 45 (1968). So long as the requirements of the Equal Protection Clause are met, each locality is free to develop the system of governance which best accords with its needs.

For the reasons stated above, the decision of the district court is reversed and remanded.